# CHARLESTON.

MULLENS REALTY & INSURANCE CO. v. D. M. KLEIN *et al.*

Submitted March 2, 1920.     Decided March 9, 1920.

1. LANDLORD AND TENANT—*Abandonment of Lease by Operation of Law Results from Acts Implying Mutual Consent to Termination.*

   A surrender or abandonment of a lease by operation of law results from acts of the parties which imply mutual consent to a termination of the tenancy. Whether such surrender has occurred is a question of intention.   (p. 714).

2. SAME—*Indefinite Tenancy of Building Terminated by Tenant's Failure to Pay Rent and Lessor's Re-entry and Lease to Another.*

   A tenany of a building devoted to mercantile pursuits may, where no definite term is prescribed, be terminated by notice of the lessee's intention to abandon and his abandonment thereof manifested by the actual removal of his stock of goods therefrom, his failure thereafter to pay the rent as and when it became due, and the lessor's re-entry and lease of the same property to another for a like purpose, and the occupancy thereof by the latter pursuant to such contract.   (p. 714).

3. SAME—*Where Remedy at Law is Inadequate, Equity May Enjoin Interference with Tenant's Possession.*

   Where the remedy at law is inadequate, equity has jurisdiction, at the suit of a lessor, to enjoin repeated and threatened acts of interference with the possession of one tenant by another who asserts a prior pretentious right to the pos-

session of the same property, but which tenancy he voluntarily surrendered or abandoned, or which has terminated by operation of law.  (p. 717).

4.  INJUNCTION—*Circuit Judge on Notice to Party to be Affected May Dissolve an Injunction in Vacation Without Costs.*

Though a circuit judge lawfully may, upon notice duly served upon the party to be affected thereby, dissolve an injunction in vacation, he cannot in the order of dissolution so entered award costs for or against either party to the cause.  (p. 718).

5.  SAME—*Judge of Circuit Court May Award an Injunction Affecting Rights of Parties to Cause Pending in Court of Another Circuit.*

A judge of one circuit in some circumstances lawfully may award an injunction affecting the rights of the parties to a cause pending in a court of another circuit, and when he does so, such order becomes the order of the court wherein the cause is pending.  (p. 718).

6.  SAME—*Where Judge of One Circuit Awards Injunction Affecting Rights of Parties to Cause Pending in Courts of Another Circuit, He Cannot Award a Rule Charging a Contempt of the Injunction Order.*

In such a case the judge who awarded the injunction cannot lawfully award a rule charging a contemptuous disregard of the injunction order, and if he does so, the pendency of the rule, though served upon the accused, does not prevent him from moving the court to dissolve the injunction so awarded. (p. 719).

Appeal from Circuit Court, Wyoming County.

Suit for injunction by the Mullens Realty & Insurance Company against D. M. Klein and others.  From a vacation decree dissolving an injunction theretofore awarded, pursuant to the prayer of the bill, plaintiff appeals.

*Reversed, injunction reinstated, cause remanded.*

*Grover C. Worrell,* for appellant.

*Toler & Moran,* for appellees.

LYNCH, JUDGE:

The right to have the protection afforded by an injunction against the defendant Klein's unlawful interference with the quiet enjoyment by plaintiff, a corporation, of a lot and building

in the Town of Mullens, the title to which is undisputed, is presented for determination upon this appeal from a vacation decree dissolving an injunction theretofore awarded pursuant to the prayer of the bill filed in the cause. According to the allegations of the bill, plaintiff leased the property to defendant D. M. Klein for mercantile purposes sometime prior to January 1, 1918, from month to month, upon a $30 monthly rental payable in advance on the first day of each succeeding month. This rental defendant paid as agreed until December 1, 1918, and entered into the possession of the property and continued to occupy it until about that date, when he ceased and has not since resumed payment of the rental, and abandoned the leased premises and therefrom removed his stock of goods to another building in Mullens where he since has carried on the same business. Thereupon plaintiff entered into a new lease with E. H. Lopinsky for the building thus vacated, and it is for the purpose of restraining defendant from interfering with the new tenant that this suit was instituted.

The chief disagreement between the allegations of plaintiff's bill and defendant's answer is as to the duration of the lease term, the abandonment of the premises and the removal of the stock of merchandise. According to the latter, the lease was to continue indefinitely from month to month, and defendant insists that he did not surrender or abandon it on December 1, 1918, but left remaining in the building a material part of his stock of goods. The answer is silent as to the payment or tender of the rental due and payable on and subsequent to December 1st until after defendant knew plaintiff had leased the property to defendant's competitor in the same line of business, when defendant offered to increase the amount of the rental from $30 to $65 per month. But as neither contract was in writing, the duration of neither term could extend beyond the period of one year from the date it was entered into except by the mutual acquiescence of the parties. Clause 6, section 1, ch. 98, Code 1918.

Though it is true abandonment of rights under a lease depends to some extent upon the intention of the party against whom it is to be applied, yet where every act of his and his conduct respecting the premises leave no doubt as to the existence

of a design and purpose to abandon the leased building, and the landlord with knowledge of such intention releases to another, thereby accepting or acquiescing in the abandonment, the intention of both parties to terminate the former tenancy clearly discloses itself. *Sult v. Hochstetter Oil Co.,* 63 W. Va. 317, 329 et seq. In view of these facts it is not material whether the lease under which defendant claims was one for a definite term ending on December 1, 1918, or one continuing from month to month, for in either event the parties have shown by their actions that their mutual rights thereunder were surrendered and terminated on the date above mentioned. Klein left the property, moved his goods out of it with the possible exception of a few boxes and tables, took them to another building and there offered and exposed them for sale, ceased to pay rent for the premises vacated and did not thereafter pretend to exercise the right to control the latter until he ascertained that a business rival had leased the building, purchased and caused to be shipped to Mullens a stock of merchandise similar to his and was about to display them therein to the public for sale in competition with him. Then it was that he for the first time asserted a claim of right to the leased premises, contending that at no time had he abandoned his rights under the tenancy from month to month.

Acting upon the assumption of a terminated right and abandonment of the premises by defendant, plaintiff first granted to a contractor the privilege of storing therein temporarily lumber purchased for use in the erection of a nearby structure. This privilege the contractor availed himself of until plaintiff contracted to lease the premises to E. H. Lopinsky, to whose occupancy and enjoyment thereof defendant seriously objected and undertook to hinder and prevent until restrained by the inhibitive process later dissolved and subsequently restored by the award of this appeal.

There is, it seems to us, no merit in the asseveration of defendant that he had not removed all of his stock of merchandise from the premises prior to December 1st, but had left therein a substantial part of the stock for sale by his employees, who were selling the same when plaintiff entered into the contract with Lopinsky. Such claim is merely pretentious. It has no

substantial foundation on which to rest except his own unsupported affidavit, which is contradicted and proved to be unfounded by Early, the contractor, who says that no one was in charge of the building when he unlocked it for the purpose of storing his lumber, and that nothing else was stored there except paper boxes and some tables, and on the front door in display letters printed in chalk were the words, "Moved to New Building next to Bank of Mullens." Harry Klein corroborates Early as to what was in the building on December 6, 1918, including the lumber placed therein by the latter for the bank and from whom Klein obtained the key. Besides, in neither of two letters written by defendant Klein to L. N. Frantz, representing plaintiff, did Klein pretend not to have abandoned the premises, and demanded nothing except a payment for improvements made by him upon the property, and complained only because the building was to be occupied by a competitive business instead of by a drug store, according to the assurances given, as he claims, by G. C. Worrell, plaintiff's attorney, as to which Worrell also contradicts him. The motive, if not the animus, impelling the conduct displayed by defendant in his relentless effort to molest and annoy plaintiff and especially Lopinsky was his desire and intention expressed to Frank Cray, and not denied, that all he wanted was to keep Lopinsky out of the building until after the holiday season had passed, and doubtless he would have accomplished that purpose but for the restraining process of the court. As Lopinsky had possession of the demised premises since early in December, 1918, he took and holds it apparently only because of the protection afforded him by that process, which still is in force and effect.

By every act of his until enjoined defendant attempted to prevent the entry of Lopinsky upon and into the property without the slightest pretense of a substantial right to interfere with him, and these often repeated acts were of a highly vindictive character. After having removed his goods from the premises and in order to delay and prevent the occupation of the building by Lopinsky under his contract with the plaintiff, Klein made repeated efforts to resume possession of the building so vacated by him, caused the arrest of Lopinsky's employees, agents and servants and their arraignment before his co-defendant W. S.

Thompson, a justice of the peace, upon warrants charging them with breaking and entering the building with intent to steal and appropriate to their own use the goods and property therein found, which, as we have seen, were of the most trifling character.  And while such employees and agents were in legal custody under the authority of the warrants, Klein reentered upon and resumed possession of the building theretofore abandoned by him, and through and by and with the aid and assistance of deputy sheriff L. O. Belcher, without authority of law and by threats, menace and force, retained and held such possession and refused to permit the representatives of the plaintiff or the agents of its tenant to enter again upon the property for the purpose of the tenancy, and persisted in such refusal until ordered by the court to cease his interference with the right of the plaintiff and his tenant respecting the property.

The charge of the bill, not denied, is that the justice, Klein and Belcher by their concerted and fraudulent action will, if not restrained, persist in their unlawful efforts to prevent the adverse reoccupation of the premises, in which event liability will attach to plaintiff for the loss so occasioned its tenant; that the remedy at law is inadequate because of the uncertainty of the extent and measure of the damages that may ensue as a result of the loss and depreciation in the value of the more than $15,000 worth of goods purchased by the tenant for sale in the building during the current holiday trade season and their unfitness for sale at any other season of the year; and further that the remedy at law is inadequate to give occupancy to plaintiff's tenant within a reasonable time and to secure him in the quiet enjoyment of the premises.

Jurisdiction in equity to grant an injunction against the commission of trespass upon real estate, though regarded as well established, is to be exercised sparingly and is confined ordinarily to cases where from the very nature of the property affected or the frequent repetition of the trespass the injury sustained is not susceptible of remediable damages and therefore the injury may properly be deemed irreparable.  1 High on Injunctions (4th Ed.), §697.  The actual and threatened molestation of the free and quiet enjoyment of property accorded by law to the acknowledged rightful owner or tenant evidently is

of such serious character as warrants a more certain, speedy and full remedy than that afforded by the less satisfactory and less flexible resort to repeated actions at law made necessary by the frequent repetition of the trespass. The liability anticipated by plaintiff is not fanciful or unsubstantial but a real danger. Its duty to the rightful tenant requires protection against the unauthorized act of the defendant Klein. Neither the plaintiff nor its tenant is without legal remedy in the strict sense of that term, it is true. But resort to such remedy is fraught with delays, uncertainty and doubt, making it more precarious and less prompt and grossly less adequate to meet the exigencies of the situation. In the meantime property rights become less valuable, if, as threatened, defendant persists in the purpose to defeat the exercise of the natural proprietary rights incident to ownership. If the effect of such acts is the substantial impairment of the use and enjoyment guaranteed by law to the owner and through him to his lessee, and he is without other remedy competent to afford him an equally prompt and adequate relief against threatened trespass, equity will not hesitate to exercise its powers in his behalf. *Gaffey* v. *Northwestern Mutual Life Insurance Co.,* 71 Neb. 304; *Boston & Maine R. R.* v. *Sullivan,* 177 Mass. 230; *United States Freehold Land & Emigration Co.* v. *Gallegos,* 89 Fed. 769. This principle this court has frequently applied in cases of waste or injury to the corpus of real estate and in those involving the production from leasehold oil and gas estates. Ordinarily equity will not interpose by injunction where there is no other ground of equitable interposition unless the injury about to be inflicted is irreparable, yet the term "irreparable" does not always mean what it seems to signify, that is, a physical impossibility of reparation. As judicially defined, it means only a grievous or substantial injury, one not adequately compensable in damages (*Haskell* v. *Sutton,* 53 W. Va. 206, 220), or where the compensation cannot safely be measured. *Bettman* v. *Harness,* 42 W. Va. 433. These principles established by the authorities cited the decree entered in this cause wholly disregarded. *Gaffey* v. *Northwestern Mutual Life Insurance Co., supra.*

An "injunction may be dissolved in vacation by the judge of the circuit court of the county in which the same is pending"

upon reasonable notice in writing of the time and place of the motion therefor duly served upon the opposite party. Section 12, ch. 133, Code. But the power of such judge in vacation is limited and restricted to but one issue, the right to have and maintain the writ upon the facts alleged in the bill. In other words, the power to dissolve does not include the right to do more than the statute plainly purports to authorize him to do in chambers. It does not and was not intended to warrant the award of costs for or against either party to the cause as the decree appealed from undertook to do. As said in *Monroe* v. *Bartlett,* 6 W. Va. 441: "Under the provisions of the Code of this state a judge of a circuit court has no power or authority to render a decree in vacation which purports to be final as to any subject embraced by it." The same statement of law is reiterated in *Rollins* v. *Fisher,* 17 W. Va. 578. The award of costs has some of the elements of finality and is binding upon the parties until it is reversed upon appeal or corrected by the court that entered the decree, order or judgment. *Gilmer* v. *Baker,* 24 W. Va. 72, declares to be "erroneous and perhaps void" a vacation decree adjudicating adverse claims or rights though the parties interested in the cause assented to its entry. Chapter 65, Acts 1917, (Section 27, ch. 131, Code 1918) does, however, enlarge the scope of the power of circuit court judges, and permits them to hear and determine in vacation the merits of chancery causes and law actions and therein to pronounce decrees, orders and judgments, by and with the consent of the interested parties in writing entered of record in the cause, and, presumably, not otherwise, except as therein specifically provided.

We deem it unnecessary to notice, except casually, the objection that until Klein had purged himself of the contempt due to his alleged disregard and violation of the express terms of the injunctive process, the court over plaintiff's protest ought not to have entertained the motion to dissolve. Whether well founded or not, the contempt, if any, concerned only the circuit court of Wyoming County, and, so far as appears, that court has not taken cognizance of any attempt to do anything inhibited by the injunction order. Apparently the rule was issued by and

made returnable before the judge of the circuit court of a different county.

*Decree reversed, Injunction reinstated and cause remanded.*