# CHARLESTON.

JOHN McGIBSON v. COUNTY COURT, ROANE COUNTY.

Submitted December 11, 1923. Decided January 9, 1924.

1. JUDGMENT—MOTIONS—*Circuit Court May Not Enter Order or Decree in Vacation in Absence of Statute.*

   A circuit court has no power to enter an order or decree in vacation, unless so authorized by statute. (p. 342).

2. INJUNCTION—*Under Code, Circuit Court May Not Dissolve Injunction in Vacation Unless it Stays Proceedings on Money Judgment or Decree.*

   Under section 12, chapter 133, Code, a circuit court is not authorized to dissolve an injunction in vacation unless it be one staying proceedings on a judgment or decree for money. (p. 342).

3.   SAME—*Under Statute Omitted from Code, Circuit Court May Dissolve Injunction in Vacation Unless it Stays Proceedings on Money Judgment or Decree.*

But under chapter 31, Acts 1870, which provides that: "The judge of a circuit court in which a case is pending wherein an injunction is awarded, may, in vacation, dissolve an injunction, after reasonable notice to the adverse party," the circuit judge may in vacation dissolve an injunction, whether it be to stay proceedings on a money judgment or decree or any other act.   (p. 342).

4. STATUTES—*Act Authorizing Circuit Court in Vacation After Reasonable Notice to Dissolve Injunction in Full Force Though Omitted from Codes.*

Chapter 31, Acts 1870, which authorizes a circuit judge in vacation after reasonable notice, to dissolve an injunction in a pending cause, although omitted from the various compiled codes, has never been amended or repealed, and remains in full force.   (p. 343).

5. ·  EMINENT DOMAIN—*Law Authorizing Assessment of Damages and Benefit in Road Location Proceedings Held Not to Change General Law As to Exclusion of General Benefit from Computation of Damages.*

Section 138, chapter 112, Acts 1921, being section 138, chapter 43, Barnes' Code, 1923, wherein it provides that a county court "may enter upon any lands, other than those prohibited by law, and locate and build said road, and sixty days after said road is completed" cause thirteen freeholders to be nominated by the county court and the five remaining, after the court and the land-owner shall each have struck off four, shall "go upon the land and assess the damages and benefits, taking into consideration the benefits accruing and the damages to it sustained, and shall fix the compensation or damages" does not change the general law as to the exclusion of general benefits from the computation in ascertaining damages in condemnation proceedings.   (p. 345).

6.   SAME—*"Benefits," Used in Law Authorizing Taking of Land for Road Purposes and Assessing Damages and Benefits, Means "Peculiar Benefits"; Law Authorizing Taking of Lands for Road Purposes Held Not Void Because Operating Inequitably.*

The term "benefits" as used in the statute means "peculiar benefits," the section is not therefore void because it operates inequitably as between the owner whose land is taken and other owners whose lands are not taken.   (p. 346).

7.  Same—*Law Authorizing Taking of Land for Road Purposes Not Unconstitutional Because Taking in Advance of Payment.*

Nor is the statute in contravention of section 9, article 3 of the constitution because it authorizes a county court to take land for road purposes in advance of payment. (p. 346).

8.  Same—*Law Providing for Taking Land for Road Purposes Held Unconstitutional in Not Providing Landowner Remedy to Enforce Compensation.*

But because it does not provide any remedy to the landowner by which he may enforce compensation within a reasonable time after the taking, it is unconstitutional and void. It does not require the county court to take any steps toward ascertaining the compensation until sixty days after the work is completed; the property might be taken or destroyed and the completion of the work delayed for years. This would result in depriving the owner of his property without the just compensation required by section 9, article 3 of the constitution. (p. 347).

9.  Same—*Sixty Days Not Unreasonable Time to Begin Proceedings to Ascertain Compensation for Land Taken for Road Purposes.*

Chapter 6, Acts 1923, amending section 138, chapter 112, Acts 1921, provides that the county court may "enter upon any lands, other than those prohibited by law, and locate and build" roads; that "within sixty days after such entry" the county court shall petition the circuit court to nominate thirteen freeholders, the remaining five of which number, after the county court and the landowner shall each have struck off four, shall assess the compensation or damages to be paid; the period of sixty days from the date of the entry is not an unreasonable time given the county court to begin proceedings to ascertain the compensation. (p. 348).

10.  Same—*"Entry" Under Statute Authorizing Taking of Lands for Road Purposes Defined; Not Necessary for County Court to go on Condemned Lands and Begin Construction of Road to Effect "Entry."*

An entry within the meaning of the statute under a reasonable interpretation means the establishing of the road on, and an appropriation of, the land, by a proper order of the county court. To effect an entry under the statute it is not necessary that the county court go upon the lands and begin the work of construction. (p. 349).

11.    APPEAL AND ERROR—*Dissolution of Injunction Granted to Stay Proceedings Under Void Statute Reversed, and Injunction Modified and Reinstated, Where Statute Amended Pending Procedure Taken Thereunder.*

A county court enters an order relocating a road upon and appropriating certain lands for that purpose, under certain invalid provisions of section 138, chapter 112, Acts 1921; the circuit court having issued a temporary injunction restraining the county court from taking possession of the lands until compensation therefor be paid to the owner, later dissolves the injunction. While the matter is pending in this court on appeal, the legislature amends the statute by requiring the county court, within sixty days after its entry on the lands, to petition the circuit court to name commissioners to ascertain the compensation to the landowner. Under these circumstances the order of dissolution will be reversed, the temporary injunction modified, reinstated and perpetuated until the county court shall have filed its petition with the circuit court, praying for the naming of the commissioners to ascertain the compensation.  (p. 349).

Appeal from Circuit Court, Roane County.

Action by John McGibson against County Court, Roane County. From an order dissolving an injunction restraining defendant from entering the lands of plaintiff and constructing a county-district road, until just compensation therefor shall have been paid or secured, plaintiff appeals.

*Decree reversed, and original order modified and affirmed.*

*Grover F. Hedges* and *S. P. Bell,* for appellant.
*J. W. Lance,* Prosecuting Attorney, and *Harper & Barker,* for appellee.

MEREDITH, PRESIDENT:

Plaintiff on October 11, 1922, obtained an injunction, restraining the county court of Roane County from entering upon his lands and constructing a county-district road thereon "until just compensation therefor shall have been paid or secured to be paid" to the plaintiff. The injunction was awarded in vacation and also dissolved in vacation, by an order entered December 2, 1922. From the order dissolving the injunction, plaintiff appeals.

There are three grounds of error assigned:

1.   That the court had no authority to dissolve the injunction in vacation.

2.   That the record shows that the county court in establishing the road is acting capriciously and fraudulently.

3.   That the statute under which it is proceeding, section 138, chapter 112, Acts 1921, being the latter part of section 138, chapter 43, Barnes' Code, 1923, is unconstitutional and void.

1.   Can a circuit judge in vacation dissolve an injunction in a case like this? It was held in *Logan* v. *Ballard,* 61 W. Va. 526, 57 S. E. 143, that "A judge in vacation may dissolve an injunction, but cannot dismiss the bill." That case involved an injunction to stay proceedings on a judgment for money. Under section 12, chapter 133, Barnes' Code, 1923, "*Any such injunction* may be dissolved in vacation, by the judge of the circuit court of the county in which the same is pending," but this applies only to injunctions staying proceedings to enforce a judgment or decree for money. In *Mullens Realty & Insurance Company* v. *Klein,* 85 W. Va. 712, 102 S. E. 677, it was held that a judge in vacation might dissolve an injunction restraining the unlawful interference with plaintiff's enjoyment of a certain building, but could not award costs. The authority to do so there seems to be based on section 12, chapter 133, Code; but a careful reading of that statute will disclose that that section does not give him that power in any case except in the instance named, namely, where the injunction stays proceedings to enforce a money judgment or decree. This seems to have been overlooked in a number of other cases, as in *Logan* v. *Ballard, supra.*

We can not accede to the view urged by defendant's counsel that a circuit judge has authority to enter an order in vacation dissolving an injunction under his general powers; on the contrary, his authority to do so must be conferred by statute. "In the absence of statute so providing, no decree of any kind can be entered in the vacation of the court." 1 Hogg, Equity Procedure (Carlin's Ed.) §600, and cases there cited. As pointed out by Judge HAYMOND in *Hayzlett* v. *McMillan,* 11 W. Va. 464, "The 12th section of chapter

151 of the Code of Virginia of 1860, which was in force in this state until the code of this state of 1868 took effect, provides that 'The judge of a circuit court in which a case is pending, wherein an injunction is awarded, may in vacation dissolve such injunction after reasonable notice to the adverse party'," and that this provision, for some cause unknown, was omitted from the Code of 1868; but that the Legislature by an act, passed February 24, 1870, chapter 31, re-enacted the omitted section. The title of the act is: "An act to authorize circuit judges in vacation to dissolve injunctions."

The act reads:

"The judge of a circuit court in which a case is pending wherein an injunction is awarded, may, in vacation, dissolve such injunction, after reasonable notice to the adverse party. His order for dissolution shall be directed to the clerk of said court, who shall record the same in his order book."

This statute seems never to have found a place in the various codes compiled since its passage. It is designated as section 12-a of chapter 159 in Kelly's Rev. Statutes, (1879), but is omitted from Warth's Codes of 1884, 1887, 1891, 1899; West Publishing Company Code, 1906; Hogg's Code, 1913; Barnes' Codes, 1916, 1918 and 1923. By chapter 78, Acts 1882, certain sections of chapter 133 of the Code were amended, including section 12, but these amendments do not affect the act of 1870, quoted above. After diligent search through all the subsequent acts, we have been unable to find where chapter 31 of the acts of 1870 has been repealed. It is an independent statute. It does not purport to amend any act of the Legislature or any part of the Code. Why it has been omitted from the various compilations we can not say. It has been buried for fifty years, and might still be so but for research of counsel in this case. But we cannot agree with plaintiff's counsel that it has been amended by chapter 78, Acts of 1882. It is not referred to in any part of that act or in any subsequent legislation. We find no later statute inconsistent with it; hence we must hold that it is still in full force. It therefore follows that a judge in

vacation may dissolve an injunction, no matter whether it stays proceedings to recover a judgment or decree for money, as he may do under sec. 12, ch. 133, Code, or whether it be in any other cause. The act of 1870 makes no distinction.

2. Can we say that the county court is acting capriciously and fraudulently? Plaintiff avers that his farm, through which the proposed road is to be constructed, consists of 256½ acres, lying along McKown's Creek; that it is a fine grazing farm, and is useful only for that purpose; that plaintiff's only source of water for his stock is in McKown's Creek; that the proposed road will entirely cut off the main body of the farm from the creek and thereby destroy the value of the farm for grazing purposes; that the road can be constructed on the opposite side of the creek on a more suitable location and for less money and that it will serve the public better than the proposed road; that by locating it where proposed, a neighbor, John Z. Neal, will be cut off entirely from the public road, whereas, if it be located on the opposite side, he will have access to it; that one, G. W. Canterbury, who owns a farm adjoining plaintiff's land and Neal's farm, conceived the plan of having the road relocated so as to cut off the Neal farm from the public road so that he might buy it at less than its actual value and that this fact was known to the county court before the relocation was made; that Canterbury and others petitioned the court on February 23, 1922, to make the relocation, which begins near the plaintiff's residence and extends up McKown's Creek on the north side of the Canterbury residence, about half a mile; that the court then ordered the relocation to be resurveyed and appointed Canterbury and Fleshman, two of the petitioners, with C. A. Lynch and L. B. Greathouse, county surveyor, to survey and relocate the road; these viewers reported, giving the direction and location, and showing it would extend through plaintiff's farm 800 feet and through Canterbury's farm 1211½ feet; that plaintiff's land would have to be condemned, but Canterbruy would give a free right of way; that the cost of the improvement would be about $750. This report does not appear to have been recorded until October 6, 1922, although the court gave plaintiff notice under date of May 3, 1922, that the viewers

had been appointed, the court had undertaken the improvement, and that the viewers were authorized to go upon the proposed relocation, further notifying plaintiff not to interfere under penalty of the law.

Upon recording the report, the court approved it, stating that "in order to secure better grades and alignment of said road and to avoid crossing the creek and keep out of it, it was necessary to relocate said road upon the property of" plaintiff and G. W. Canterbury. The order relocates the road in accord with the report, and further provides that "there is to be a bridge at or near where this road intersects with the State road of thirty to fifty feet long", and that the property holders be summoned to appear November 20, 1922, to show cause why the road should not be relocated on their property, and that the notice be published for two weeks in two designated newspapers. This notice was served upon plaintiff on October 7th. On October 6, 1922, a further order was entered by the county court, directing that McGibson and Canterbury be served with notice of the court's intention to relocate the road, and C. L. Burdette was appointed and directed to go upon the road and use due diligence in completing the same, "beginning October 16th, 1922".

One notice served upon plaintiff informed him that the county court would on October 16th, 1922, enter upon the land to change and improve the road; the other that he should appear before the court on November 20, 1922, to show cause why the work should not be undertaken.

On October 11, 1922, plaintiff obtained a temporary injunction, restraining the defendant from entering upon his lands to construct the road, setting up the aforesaid matters; defendant answered the bill, and states that the date of November 20th, 1922, fixed in the aforesaid notice, was inserted therein by mistake; that inferentially, at least, it should have been October 16, 1922; that the members of the court, acting as a committee of its own body, on October 6, 1922, went upon the ground and viewed the change and location of the proposed road; that by mistake, the committee of the court members, failed to make their report, until October 25, 1922, when it was made and filed and

another order was made undertaking the proposed work and directing the plaintiff to appear before the court on November 1, 1922, to show cause why the road should not be so established, and to show what compensation he was entitled to; after full hearing thereon, on November 5th, 1922, the change was ordered and they failing to agree upon the compensation, it was further ordered that within "sixty days after said road is completed that the amount of compensation, if any" to be paid him should be determined as provided in the latter part of section 138, chapter 112, Acts 1921. It should be further stated that the court offered to build in the road over plaintiff's lands a bridge 12 or 14 feet high and from 30 to 50 feet long so that plaintiff's stock may pass under it to and from McKown's Creek for watering purposes, and to pay him $50.00 damages.

We have stated at length the matters relied on by plaintiff. It is sufficient to say that defendant denies all the material allegations of plaintiff's bill. That the change will seriously damage plaintiff's farm clearly appears; that the underpassway to be provided by the court for plaintiff's stock will in a measure diminish this damage is apparent. But plaintiff holds his lands subject to public right. If damaged, the public must pay for it. That the location was inspired by Canterbury to enable him to obtain the Neal farm at a low price could not aid plaintiff's case. If Neal is thereby injured that is no legal injury to plaintiff. Ours is a representative government; under it there has been delegated to the county court the power to establish and maintain roads; to carry out that power it must necessarily exercise its judgment. Private citizens can not substitute their judgment for that of the county court. To permit them to do so would in effect reverse and set aside the orderly processes of government and take back the authority entrusted to the court by the deliberate vote of the people. The court, upon its own deliberate judgment, has made the re-location, as it is authorized to do, and we can not say it is acting fraudulently toward the plaintiff or the public.

3. The county court elected to condemn plaintiff's property under the second method provided for in section 138, chapter 112, Acts 1921, section 138, chapter 43, Code, 1923.

Plaintiff claims this is unconstitutional. That section provides that the court "may enter upon any lands, other than those prohibited by law, and locate and build said road, and sixty days after said road is completed", cause thirteen freeholders to be nominated by the court, and the five remaining after the court and the landowner shall each have struck off four, shall "go upon the land and assess the damages and benefits, taking into consideration the benefits accruing and the damages to it sustained, and shall fix the compensation or damages", which shall be paid out of the road fund of the county or district at the discretion of the court. Either party may, within six months after the assessment is made, appeal to the circuit court, where the compensation or damages may be tried by a jury.

The validity of this statute is attacked on four grounds: (1) that it operates inequitably as between the owner whose land is taken and other land owners whose lands are not taken; (2) that it does not provide for certainty of compensation within a reasonable time after appropriation of the land; (3) that it takes the owner's land without due process of law; and (4) that no proper method of appeal to the circuit court from the assessment by the five commissioners is provided.

The first objection is not well founded. While the statute says that the commissioners shall "assess the damages and benefits, taking into consideration the benefits accruing to the property and the damages to it sustained", we think the term "benefits" means "peculiar benefits" as defined in the general law of condemnation proceedings. If an appeal from the commissioners' assessment is taken to the circuit court, the trial is to be had there according to the provisions of section 14, chapter 42, Code, where peculiar benefits only are to be considered; general benefits are there excluded. If they are to be excluded by the circuit court, they likewise should be excluded by the commissioners.

The remaining objections may be considered together. Section 9 of Article 3 of the Constitution provides:

"Private property shall not be taken or damaged for public use, without just compensation; nor shall the

same be taken by any company, incorporated for the purposes of internal improvement, until just compensation shall have been paid, or secured to be paid, to the owner; and when private property shall be taken, or damaged, for public use, or for the use of such corporation, the compensation to the owner shall be ascertained in such manner as may be prescribed by general law; provided, that when required by either of the parties, such compensation shall be ascertained by an impartial jury of twelve freeholders.''

It will be observed that this provision covers two classes of cases, one where the property is taken or damaged for public use by the state or any of its subdivisions, and the other when it is taken by any company incorporated for purposes of internal improvement. In the latter case it can not be taken until just compensation shall have been paid or secured to be paid.

But where land is taken or damaged for public use by the state or by any of its sub-divisions, under state authority, the constitution is silent as to time of payment; it merely says that the compensation shall be ascertained in such manner as may be prescribed by general law. In *Keystone Bridge Company* v. *Summers*, 13 W. Va. 476, it was held that payment in such case need not be made in advance of the taking. We think this is in accord with the weight of authority. 20 C. J. p. 837, and cases there cited. However, where land is so taken, there must be provided some remedy to the owner whereby he may have compensation within a reasonable time and that he will receive it must be certain. He must not be put to risk or unreasonable delay. 1 Nichols, Eminent Domain, (2d. ed.) 631; 10 R. C. L. p. 125. ''It is essential, however, that the remedy be one to which the party can resort on his own motion; if the provisions be such that only the public authorities appropriating the land are authorized to take proceedings for the assessment, it must be held to be void.'' Cooley's Cons. Lim. (7th. ed.) p. 815, and cases cited. Tested by these principles, where does the land owner stand under the provisions of the statute? The county court may enter on his land, deprive him of possession, and it is not required to take a single step toward even ascertaining the amount of the compensation to be paid until sixty days

after the work is completed. The work might be delayed for years; so that the time in which payment is to be made might be delayed for a like period. Again, the owner is given no right to initiate proceedings. He is not authorized to resort to the remedy provided by the statute; that is given to the court alone. For these reasons we hold the statute invalid. It, therefore, follows that the court erred in dissolving the injunction, as the threatened entry of the county court as contemplated was unauthorized.

But the matter does not end here. Since the entry of the decree and the award of the appeal, the Legislature has amended the statute, chapter 6, Acts 1923. By the amendment it is provided that the county court, instead of proceeding to condemn under the provisions of chapter 42, Code, may "enter upon any of said lands, other than those prohibited by law, and locate and build said roads. Within sixty days after such entry the county court shall petition the circuit court to nominate thirteen freeholders, and the said circuit court, or the judge thereof in vacation, shall nominate, within thirty days after the filing of such petition, thirteen freeholders", of which number, the five remaining, after each party shall have struck off four, shall be commissioners to assess the damages. The amount so assessed is to be paid out of the road fund of the county or district at the discretion of the court. Either party "may within six months after the assessment aforesaid, appeal or apply to the circuit court of the county and demand a trial therein, as in other condemnation proceedings, *provided, however,* before entering upon said land as authorized by this section, it shall be the duty of the county court or its representatives to serve notice upon the owner or owners of said land, as provided by law, notifying each owner or owners that the road is to be located upon their land under the authority of this section."

The constitutionality of the amendment does not appear to be questioned in this case; no such suggestion is made in brief of counsel. Upon such an important matter we should not pass unless compelled to do so; but the decree to be entered   here does require us to consider its validity. If the amended statute is invalid, then plaintiff is entitled to have

the injunction perpetuated until the defendant shall have taken proper steps to condemn his lands. The amendment does not provide for payment in advance of the taking; but it does provide a definite time in which the county court must start proceedings to ascertain plaintiff's compensation. Sixty days is certainly within a reasonable time. It does not, however, in terms, give the land owner any right to initiate proceedings. There are many holdings to the effect that under such circumstances, the landowner may by mandamus compel the county court to take the necessary steps, as in this instance to petition the circuit court to appoint commissioners. *McDowell* v. *Asheville,* 112 N. C. 747; 2 Lewis, Eminent Domain, §879. While this is a round-about method, and it would perhaps be fairer and better to permit the land owner himself as well as the county court to petition the circuit court to appoint commissioners, we can not say that the provision made is invalid and that the land owner is deprived of his property without due process of law.

But as the parties are in a court of equity, and as the county court notified the plaintiff of the proposed relocation, a hearing was had thereon, and an order duly entered relocating the road, though made after the injunction was awarded, we think the injunction should now be perpetuated until the county court shall have filed its petition with the circuit court as required by the amended statute, praying for the appointment of commissioners, instead of until compensation is made as the injunction awarded read. To this extent the restraining order should be modified. In this connection we think it proper to state that as we interpret the amended statute, whenever the county court shall have once entered its order establishing the road and appropriating the land for that purpose, then, since under the statute the owner can not prevent the county court from proceeding with the work, the entry has begun, whether actual entry by way of construction shall have been made or not. To permit the court to establish a road on paper, and thereby put it in its power to prevent the owner from using his land and at the same time keep him out of his compensation therefor on the ground that the court had not made any actual use of the land would be manifestly unfair. As stated by Judge Cooley:

"While the owner is not to be disseized until compensation is provided, neither, on the other hand, when the public authorities have taken such steps as finally to settle upon the appropriation, ought he to be left in a state of uncertainty, and compelled to wait for compensation until some future time, when they may see fit to use his land. The land should be either his or he should be paid for it. Whenever, therefore, the necessary steps have been taken on the part of the public to select the property to be taken, locate the public work and declare the appropriation, the owner becomes absolutely entitled to compensation, whether the public proceed at once to occupy the property or not. If a street is legally established over the land of an individual, he is entitled to demand payment of his damages, without waiting for the street to be opened." Cooley's Const. Lim. (7th. ed.) p. 818, and cases cited.

Of course, this has no application to condemnation of lands under our general statute, chapter 42, Code.

We will therefore reverse the order dissolving the injunction, and modify the restraining order as above indicated, perpetuating the injunction until such time as the county court shall petition the circuit court to appoint commissioners to fix plaintiff's compensation.

Decree reversed, original order modified, and as modified affirmed.

*Reversed; and original order modified and affirmed.*