# CHARLESTON.

STATE ROAD COMMISSION *v.* C. L. MILLER *et als.*

(No. 6623)

Submitted January 8, 1930. Decided January 14, 1930.

432

*Howard B. Lee,* Attorney General; *R. Dennis Steed* and *W. Elliott Nefflen,* Assistant Attorneys General, for State.
*R. F. Dunlap* and *W. A. Brown,* for defendant in error.

LIVELY, PRESIDENT:

The State Road Commission (hereinafter called the Com-

mission) by petition to the circuit court of Summers County sought to condemn 10,000 cubic yards of rock owned by J. W. Farley and E. E. Willey on certain described land of C. L. Miller, lying near a section of state highway then being constructed up the Greenbrier river a few miles above Hinton. The rock sought to be condemned was to be used as a base on the state road. Defendants, C. L. Miller, J. W. Farley and E. E. Willey, jointly demurred to, and answered the petition.

The answer denied that the Commission desired the rock to build a public road, or that the stone was necessary in building the state highway. It avers that the Commission after having graded the highway, let the hard surfacing thereof to a contractor, Battershell, Saddler and Terry, at competitive bidding, for the sum of about $70,000, on May 1st, 1929, who were to furnish all labor and material therefor; and on May 11, 1929, said contractors gave bond conditioned for the faithful performance of the contract; that the Commission had no further interest in the road thereafter which would justify it in the invocation of the right of eminent domain, and therefore was abusing its powers under the statute for the benefit of the firm of contractors to whom the work had been let. The demurrer was overruled, and the case was submitted for decision upon the bill, answer, general replication, and an agreed statement of facts. The court, by order of July 23, 1929, denied the Commission the right to condemn and dismissed its petition. This writ followed.

The facts stipulated are that the Commission advertised for and received bids for the construction of the highway on April 30, 1929, and awarded the contract to the said contractors on May 1, 1929, who filed with their bid a certified check for $3,600 as required by the advertisement for bids; that a written contract dated May 1, 1929, was entered into between the Commission and the contractors and was executed on May 11, 1929, and was acknowledged by A. P. Terry and S. J. Saddler on May 21, 1929, and by J. J. Battershell on May 28, 1929; and that the contractors gave a bond for the faithful performance of the contract with a surety company as surety, in the penal sum of $40,080 dated May 11th and acknowledged by Terry and Saddler on May 21st and by

Battershall on May 28th, and by the surety company on May 11th; that notice that the Commission would proceed to condemn the rock was served on Miller, Farley and Willey to the effect that on June 18th it would file its petition therefor in circuit court; that on that day the Commission entered on its record a formal resolution establishing a stone quarry on the Miller land (describing it by metes and bounds) for the purpose of obtaining 10,000 cubic yards of stone for the use on the state road; that other contractors who bid on the road had taken the precaution to secure options of stone before they submitted their bids. There are contained in the stipulations other matters which would be evidence of the value of the stone to the owners, which matters are of little value in determining the right of the Commission to condemnation, and will not be detailed. It is further stipulated that the contractors above named refused to enter into the road contract and made it final until the Commission had agreed to condemn the rock and had actually served notice upon the owners of its intention to take and condemn.

Notice of intention to condemn was served on defendants on May 18, 1929, and that the Commission would enter upon the land described and take therefrom 10,000 cubic yards of stone for road building purposes, and that it would within 60 days from such entry petition the court to condemn. It appears that the contractors considered their contract as effective on May 21st, and from that date had taken from the land about 9,800 cubic yards and used same on the road pending the hearing of the condemnation proceeding which was begun on June 18, 1929. The question to be decided is whether the Commission had such an interest in the construction of the road, having let the contract on condition that it would proceed to condemn, as would give it the right to condemn. Under the statute, it is quite clear that the Commission has power to condemn rock to be used in building roads; but whether by its conditional contract with Battershell, Saddler and Terry it still retains the right to condemn, is not so clear, and is the controlling issue. The statute, section 29, chapter 43, Code, giving power to the Commission to condemn materials to be used in the construction and

maintenance of state roads is broad and comprehensive. For convenience it is here quoted:

"For the purpose of obtaining materials to be used in the construction and maintenance of state roads and highways, the State Road Commission is hereby authorized and empowered, on behalf of the state, to establish quarries, stone crushing plants, brick kilns, cement plants, and other plant or plants, deemed by it needful or necessary in the prosecution of its work, as provided by this act, and to acquire land and appurtenances thereto. The Commission shall also have power to rent, purchase or condemn, or to acquire by any other lawful means, stone quarries, gravel, clay, sand, and other deposits, with rights of way thereto, * * * and to do all other things needful or necessary in connection with the purchase, production, accumulation and distribution of such materials for the use aforesaid; * * *. The Commission may sell any surplus of such materials, products or equipment to any county or counties, or to any municipality of the state, or to any person, firm or corporation, at not less than actual cost or value, exclusively for use in the building of roads, streets alleys in this state, * * * and acquire all materials and do all things that they may deem necessary for the operation thereof and for the more economic prosecution of the work of building and maintaining public roads as provided for by this act."

It will be noted by a casual reading of this statute that the legislature had in view, and conserved the expeditious and economic building and maintenance of state highways. The powers of the Commission are unusually broad. The Commission is empowered to "acquire all materials and do all things that may be deemed necessary for the full operation thereof (plants for manufacture of cement, brick, stone and other materials) and do all other things that may be deemed necessary for the operation thereof, *and for the more economic prosecution of the work of building and maintaining public roads as provided by this act.*" To aid in further quick and economic building and maintenance of state highways,

power to condemn rock and other materials with convenient ways thereto, and establish rock quarries, is expressly granted to the Commission. The trial judge in an elaborate and learned opinion, not made a part of the record but found in the brief of the rock owners, bases his decision on the proposition of law well established, that private property cannot be taken for private use, and that by virtue of the contract between the Commission and the contractor the latter was bound to furnish all material and labor for the money consideration therein stated, and hence when the Commission sought to condemn, it was acting for the benefit of the contractor in order that the latter might make more money under his contract, if the rock was to be had at its true and actual value. The opinion assumes that the contract was made, and bond given, and then the Commission and the public had no further interest except to see that the contract was faithfully performed. This basis is not borne out by the facts stipulated. It appears therefrom that Battershell and his associates, the successful bidders, refused to execute the contract, refused to proceed further, until the Commission agreed to condemn the rock and serve notice that it would enter upon and take the rock as provided by law. That contract was conditional. It was only upon that condition that a contract was made. The fact that it bears an earlier date is not controlling. The minds of the parties did not meet until this notice of condemnation was given, and then it became effective. The Commission could have refused to condemn, and upon the refusal of the contractor to enter upon the contract in furtherance of his bid, forfeit the earnest money accompanying the bid, and re-advertise and relet the contract. The Commission was confronted with the alternative of making the conditional contract or delaying the building of the road. That situation was communicated to Farley by the Commission by letter of May 13, 1929, exhibit "H" with the answer and made a part of the stipulation of facts. The section of road let was the last gap in an important state highway which had been hard surfaced for many miles each way. The Commission was extremely desirious of meeting the insistent public demand that this gap be lifted out of

the mud before the coming winter. The building of that gap expeditiously and economically was the commendable purpose of the Commission. It may be; as is argued, that the contractor may reap a benefit from the condemnation if, perchance, the viewers in condemnation or a jury should assess a lower price per cubic yard than that offered by the owners who had bought the stone along the right of way after it had been located. But that benefit to the contractor, if any, is but incidental and subsidiary to the commendable object of the Commission to expeditiously conserve the public interest in the completion of this important state road. We hold that the proposed condemnation does not constitute a taking of private property for private use. On the contrary, it is for public use and falls within the broad provisions of the statute above quoted.

It is argued that even though the right to condemn may be in the Commission, yet the statute has not been complied with in the proceedings, because it is not shown that there was an attempt to agree upon a price with the owners prior to the taking of the stone, and the beginning of the proceedings. Statutes regulating proceedings for condemnation of private property for public use are strictly construed and the proceedings must be strictly followed. *Adams v. Campbell*, 23 W. Va. 203, 207. It is quite evident that the contractor and the owners could not agree on the price of the stone, and then it was that the contractor refused to enter into the contract covering his bid. Later, on May the 13, 1929, the Commission, in its letter above referred to, invited the owners to give an expression of a reasonable dealing. There appears to have been no response to that request, and later the suit began. There was a fruitless effort to agree on the price. This, we think, was a substantial compliance with the statute in that regard. It is argued that the statute is unconstitutional because it allows the Commission to enter and take private property for road purposes and then places the burden on the owner of presenting his petition for the appointment of viewers to assess damages. In this case we cannot see where the owners can complain, for the Commission relieved them of that burden. Courts will not decide

438

constitutional questions unless they are necessary to a proper disposition of the particular case in which they are invoked. *Edgell v. Conaway,* 24 W. Va. 747; *Rutter v. Sullivan,* 25 W. Va. 427. It may be observed, however, that the constitution says in Article 3, section 9, that "when private property shall be taken or damaged for public use * * * the compen-sation to the owner shall be ascertained in such manner *as may be prescribed by general law."* The constitution itself answers the assertion of unconstitutionality on the ground assigned. This is a general law. We had a similar question in *McGibson v. County Court,* 95 W. Va. 338, 121 S. E. 99, wherein it was said on page 348: "However, where land is so taken there must be provided some remedy to the owner whereby he may have compensation within a reasonable time and that he will receive it must be certain. He must not be put to risk or unreasonable delay. 1 Nichols, Eminent Domain, (2nd Ed.) 631; 10 R. C. L. 125. It is essential, however, that the remedy be one to which the party can resort to on his own motion; if the provisions be such that only the public authorities appropriating the land are authorized to take proceedings for the assessment, it must be held to be void. Cooley, Const. Lim., (7th Ed.), p. 815." The act is not unconstitutional on the ground stated.

The judgment of the lower court is reversed, the petition reinstated, and the case remanded.

*Reversed and remanded.*