OAKLEY C. CURTIS et als., Petr's *vs.* LESLIE C. CORNISH et als.

Cumberland.   Opinion October 12, 1912.

*Constitution of Maine, Article III, Section 2.   Corrupt Practices in Elections.*
*Section 12 of Chapter 122 of Public Laws of 1911.   Executive Function.*
*Inferior   Tribunal.    Justices   of   Supreme   Judicial   Court.*
*Petition  to  establish  Exceptions.    Writ  of  Prohibition.*

1.   The tribunal provided for in Section 12 of Chapter 122 of the Public
Laws of 1911 for the inquiry into alleged corrupt practices in elections,
to be composed of two Justices of the Supreme Judicial Court, or of two
Justices of the Superior Courts, or of one Justice of each court, is a
special and inferior tribunal.

2.   Under the limitations of the Constitution of Maine, Article VI, Section
6, and Article IX, Section 2, no Justice of the Supreme Judicial Court
can be appointed to, or be a member of, an inferior court, or tribunal;
and no Justice of the Superior Courts can be appointed to, or be a member
of, another inferior court, or tribunal.

3.   The appointment of the members of an inferior court or tribunal, or
any of them, is an executive function, not a judicial one.   And the require-
ment in Section 12 of Chapter 122 of the Public Laws of 1911, that the
Chief Justice of the Supreme Judicial Court shall appoint one member of
the tribunal therein provided for, for an inquiry into alleged corrupt
practices in elections, is in violation of Article III, Section 2, of the
Constitution of Maine, which provides that "no person or persons, belong-
ing" to either the legislative, the executive or the judicial department of
the government "shall exercise any of the powers properly belonging to
either of the others."

4.   Whether the tribunal provided for in Section 12 of Chapter 122 of the
Public Laws of 1911 is judicial, or inquisitorial and political, is not
decided.   If judicial, the Justices of the Supreme Judicial and Superior
Courts cannot be members of it; if inquisitorial or political merely, its
functions do not belong to the judicial department, and, therefore, under
the limitations of constitutional power, cannot be exercised by members of
the judicial department.

5.   So much of Section 12 of Chapter 122 of the Public Laws of 1911, as
provides for the creation of a special tribunal to be composed of Justices

of the Supreme Judicial or Superior Courts, or both, for the inquiry into alleged corrupt practices in elections, is held to be unconstitutional and void.

6.  Where an inferior tribunal is attempted to be created in violation of the Constitution, and it therefore has clearly no jurisdiction of the proceedings instituted before it, and the defendant therein has objected to its jurisdiction at the outset, and there is no other adequate remedy that is available, he is entitled to a writ of prohibition as a matter of right. And the denial of it as a matter of law is error in law, to which exceptions lie.

7.  In such a case, the Justice who heard the case having declined to allow exceptions, it is the duty of the Law Court, upon proper petition therefor, to establish the exceptions, under the provisions of Revised Statutes, Chapter 79, Section 55.

On petition to establish exceptions to a ruling by the court denying a writ of prohibition. Exceptions established.

This is a petition to establish exceptions to a ruling by the court denying a writ of prohibition brought under the provisions of Revised Statutes, Chapter 79, Section 55.

On January 3, 1912, certain electors in Portland presented to one of the Justices of this court their petition alleging that corrupt practices, contrary to the provisions of Section 11 of Chapter 122 of the Public Laws of 1911, had been committed by the present petitioners in connection with a municipal election in Portland in December previous. Notice was ordered on this petition and the Chief Justice designated another Justice of this court to hear the petitioner with the Justice to whom this petition was presented.

On the return day of that petition, the respondents moved to dismiss that petition on two grounds, namely, that it was not alleged in the petition that these petitioners were electors or voters at said municipal election, and that Section 12 of Chapter 122 of the Public Laws of 1911 was unconstitutional. The two Justices denied the motion. Thereupon these petitioners presented to another Justice of this court their petition for a writ of prohibition. A hearing was had on this petition at the April term, 1912, and the presiding Justice ruled as matter of law that the petition should be denied. At the same term the petitioners presented to the presiding Justice their written bill of exceptions to this ruling and the presiding Justice refused to allow the bill of exceptions and these proceedings were commenced to establish the truth of the exceptions.

The case is stated in the opinion.
*Eben Winthrop Freeman,* for petitioners.
*Fred V. Matthews,* for respondents.

· SITTING: SAVAGE, SPEAR, KING, BIRD, HALEY, JJ.

SAVAGE, J.  Petition to establish exceptions to a ruling by the
court denying a writ of prohibition.  This petition is brought under
the provisions of R. S., Chap. 79, Sect. 55.  A commissioner was
appointed to take depositions as is provided by rule XLIII.  The
depositions have not been brought before us, but instead we have a
finding of facts made by the commissioner.  But since no question
has been made by interested parties but that the facts are correctly
stated by the commissioner, we shall proceed upon that assumption.

The following facts appear in the commissioner's report.  On
January 3, 1912, certain electors in Portland presented to one of
the Justices of this court their petition, alleging that corrupt prac-
tices, contrary to the provisions of Section 11 of Chapter 122 of
the Public Laws of 1911, had been committed by the present peti-
tioners in connection with a municipal election in Portland the
previous December, in which these petitioners were declared
elected respectively to the offices of mayor and aldermen of that
city.  That petition was brought under the provisions of Section 12
of said Chapter 122 of the Laws of 1911.  Notice was ordered, and
the Chief Justice of this court was notified.  The Chief Justice
designated another Justice of this court to hear the petition in con-
junction with the Justice to whom the petition was presented, and
all proceedings so far were in accord with the provisions of the
statute.  On the return day, these petitioners, the respondents in
that proceeding, moved to dismiss that petition on two grounds,
namely, that it was not alleged in the petition that the petitioners
were electors or voters at said municipal election, and that said
section 12 was unconstitutional in that it purported to authorize the
court or tribunal named therein to be composed of Justices of the
Supreme Judicial Court, or of the Superior Courts, or of both.
The two Justices denied the motion.  Thereupon these petitioners
presented to another Justice of this court their petition for a writ
of prohibition.  On this petition notice was ordered returnable at

the next term of the court, and, in the meantime, the two Justices and the original petitioners were restrained from proceeding further. A hearing was had on the petition for a writ of prohibition at the April term of this court in Cumberland county. At the hearing all matters alleged in said petition were shown or admitted to be true. The presiding Justice ruled as matter of law that the petition should be denied, and that the restraining order should be dissolved. Thereafter, during the same term, these petitioners presented to the presiding Justice their written bill of exceptions to this ruling, and asked that the same be allowed. The commissioner found that all matters contained in the bill of exceptions were true and correctly stated. The presiding Justice refused to allow the bill of exceptions. Then these petitioners began this proceeding to establish the truth of their exceptions.

The record does not show why the presiding Justice refused to allow exceptions, but we think the only ground on which the refusal could have been based is that exceptions do not lie in any case to the denial of a writ of prohibition. And if the granting of such a writ is purely discretionary in every case, the refusal was right, for exceptions do not lie to rulings which are discretionary with the court. On the other hand, if the granting of the writ is not always discretionary, but may sometimes be claimed as a matter of right, the denial of it as a matter of law raises a question of law, to a ruling on which exceptions lie.

In considering the case, it should be observed that the presiding Justice gave no real consideration to the constitutional question involved. He assumed the constitutionality of the statute without giving it the weight of his own views. These are his words:—"It is undoubtedly true, however, that the constitutionality of the statute might be open to attack, but according to the established and uniform course of procedure in this State, a statute will be presumed by a single Justice to be constitutional until the contrary has been established by the Law Court." The other question, that of the want of sufficient allegation in the original petition, and incidentally of the power of amendment, he did consider, and with respect to this he used the following language concerning the nature and uses of writs or prohibition, which we adopt. "A writ of prohibition is an extraordinary writ to be used with great caution

and forbearance for the furtherance of justice and for securing order and regularity in all the tribunals where there is no other regular and ordinary method. The legitimate purpose of the writ is to keep inferior courts within the limits of their own jurisdictions and to prevent them from encroaching upon the jurisdiction of other tribunals. 32 Cyc., 598. It is a writ which should be employed only in cases of extreme necessity, and not for grievances which may be remedied by ordinary proceedings at law or in equity. *People* v. *Westbrook,* 89 N. Y., 152; *Norton* v. *Emery,* 108 Maine, 472. It will not issue when there is another adequate remedy available to the applicant, either by appeal, certiorari or writ of error. Indeed, it is established by a substantially uniform line of authorities that this ancient writ is granted only for the purpose of preventing a lower court from exercising a power with which it has not been vested, and not for the purpose of controlling its proceedings or preventing or correcting its errors respecting the admission or exclusion of evidence, and the amendment of pleadings or other errors committed in the ordinary exercise of its unquestioned jurisdiction." He also said that according to the great weight of authority, "the writ of prohibition is not a writ of right, certainly not where other adequate remedies are available, but its issuance is addressed to the sound discretion of the court, to be granted or withheld by the court exercising supervisory control, according to the nature of each particular case." We agree that a writ of prohibition is not to be regarded as a writ of right "where other adequate remedies are available." And in such cases the "issuance is addressed to the sound discretion of the court." But it is not enough, we think, that there be another remedy which in form and legal scope is, or may hereafter be, applicable to the petitioner's grievance. It must be adequate to afford relief. It must give bread, and not a stone. It would seem to be a mockery and a denial of justice to remit a petitioner to a remedy which is only adequate in the sense of being technically appropriate. So that, we think, the fact that the petitioner may have another remedy is not necessarily conclusive against the issuing of a writ of prohibition. As was said by this court in *Norton* v. *Emery,* 108 Maine, 472:— All the authorities agree that the power to issue it should be used with caution, and only upon proper and necessary occasions, and

that if there is another adequate or ordinary remedy, it is the duty of the court to deny the writ, but such remedy must be prompt, efficient and equally adequate. *Connecticut River R. R.* v. *County Commissioners,* 127 Mass., 50, was a case where a land owner was seeking relief by writ of prohibition against unconstitutional condemnation proceedings. The court said:—"The fact that the remedy by petition for writ of certiorari will be open to the land owner after final judgment affords no reason why the court should now refuse a writ of prohibition, and thereby put the petitioner to the trouble, expense and delay of a trial before a tribunal which has no jurisdiction of the case, and to whose jurisdiction the petitioner has objected at the outset of the proceedings," citing *Vermont & Massachusetts R. R. Co.* v. *County Commissioners,* 10 Cush., 12; *Gould* v. *Gapper,* 5 East. 345; *Burder* v. *Veley,* 12 Adolphus & Ellis, 233, 263, 265, 313, 314.

But passing by these general considerations, we come again to the specific question, were the petitioners here entitled to the writ as of right? And as bearing upon the precise point, and as applicable to this case, we quote the language of Mr. Justice Gray, speaking for the court, in *Smith* v. *Whitney,* 116 U. S., 167. He said: "It is often said that the granting or refusing of a writ of prohibition is discretionary, and therefore not the subject of a writ of error.    .    .    .    But where that court has clearly no jurisdiction of the suit or prosecution instituted, and the defendant therein has objected to its jurisdiction at the outset, and has no other remedy, he is entitled to a writ of prohibition as a matter of right. This is the clear result of the modern English decisions, in which the law concerning writs of prohibition has been more fully discussed than in the older authorities. In re Forster, 4 B. & S., 187, 199; *Mayor &c. of London* v. *Cox,* L. R., 2 H. L., 239, 280; *Worthington* v. *Jeffries,* L. R. 10, C. P., 379, 380; *Chambers* v. *Green,* L. R. 20 Eq., 552; *Weston* v. *Charleston,* 2 Pet., 449." This doctrine is affirmed in In re Cooper, 143 U. S., 472; In re Rice, 155 U. S., 396; In re N. Y. S. S. Co., 155 U. S., 523; In re Alix, 166 U. S., 136. And it seems to be sound and wholesome.

And we think this case fairly comes within the rule.

I. In the first place, it is clear that the tribunal was an unconstitutional tribunal, and therefore had, and could have, no juris-

diction. If it were a matter of doubt, the presiding Justice might well have denied the writ as a matter of discretion. *Smith v. Whitney,* 116 U. S., 167. But it seems to us that the question is so clear as to be free from all doubt. It is so clear that the counsel for these respondents, in argument, attempts to save the statute only on the ground that the statute tribunal is a constituent part of the Supreme Judicial Court, a position without any merit, as will be seen hereinafter.

Section 12 of Chapter 122 of the Laws of 1911 provides that "at any time within thirty days after such election any elector or voter at such election may present to any judge of the Supreme Judicial or Superior Courts a petition upon oath, upon information or personal knowledge that corrupt practices, contrary to the provisions of any section of this act, were committed at or preliminary to such election, naming the successful candidate as defendant, and praying that the facts alleged may be inquired into. If such judge shall be of the opinion that the interests of public justice require such proceedings, he shall order reasonable notice of such petition to be given the defendant, and shall notify the chief justice of the Supreme Judicial Court of such petition. The chief justice shall designate another judge to hear such petition in conjunction with the judge to whom the petition was presented, and in case of the latter's disqualification or inability, the chief justice shall appoint two judges to hear such petition. Such petition shall be tried without a jury, and the petitioner and all candidates at such election shall be entitled to appear and be heard as parties." The section also provides that the trial judges shall file with the governor their joint decision as to whether the defendant was or was not guilty of corrupt practices, and as to whether or not the election was void. And in case the joint decision is that any successful candidate, who is a defendant, is guilty, the election, with some exceptions, is declared to be void, and the governor is required to issue a writ for a new election.

The point of attack is the composition of the tribunal. It is contended, on one hand, that the tribunal provided for in the section is a special, statutory, inferior, judicial tribunal, to which a justice of either the Supreme Judicial or Superior Courts cannot constitutionally be appointed, and in which he cannot constitu-

tionally sit. The Constitution, Art. IX, sect. 2, reads as follows: "No person holding the office of justice of the Supreme Judicial Court, or of any inferior court, attorney general, . . . shall be a member of the legislature; and no person shall be capable of holding and exercising at the same time within this State more than one of the offices above mentioned." Article VI, section 6 of the Constitution provides that,—"The Justices of the Supreme Judicial Court shall hold no office under the United States, nor any State, nor any other office under this State, except that of justice of the peace."

It is further contended that the provision in the statute requiring the Chief Justice of the Supreme Judicial Court to designate one Judge to hear the petition in conjunction with the Judge to whom the petition was presented, and in some contingencies to appoint two Judges, is in conflict with Article V, section 8 of the Constitution which provides that the governor "shall nominate, and, with the advice and consent of the council, appoint all judicial officers."

On the part of these respondents, it is conceded, as we think it must be, that, if the tribunal is a special or inferior one, then the statute providing for it is, and should be declared unconstitutional. A justice of the Supreme Judicial Court can hold no other office, judicial or otherwise (that of justice of the peace excepted). He cannot constitutionally be a member of an inferior court. Nor can a justice of a superior court, which is an inferior court in the constitutional sense, be a member of any other inferior court, for he would then be holding "more than one of the offices" mentioned in the prohibitory clause of the constitution above referred to.

It is also conceded that it would be contrary to Article V, section 8 of the Constitution to impose upon the Chief Justice the duty of appointing a judge of a special or inferior judicial tribunal. We think it would also be repugnant to Article III, section 2, of the Constitution. Section 1 of this article provides that "The powers of this government shall be divided into three distinct departments, the Legislative, Executive and Judicial." It is then, in section 2, declared that "No person or persons, belonging to one of these departments shall exercise any of the powers properly belonging to either of the others." To appoint the judges of an inferior court,

or indeed, to appoint to any civil office, judicial or otherwise, is an executive function, not a judicial one. The duty of making such appointments cannot be constitutionally imposed upon, or exercised by, a judicial officer. The Chief Justice is a judicial officer, belonging to the judicial department. He cannot perform executive functions.

But it is suggested that the tribunal provided for in section 12 is a constituent part of the Supreme Judicial Court, and not a special or inferior tribunal; and if so, that it is not an unconstitutional function for the Chief Justice of the Supreme Judicial Court to designate another Justice of the same court to perform some particular part of the court's work. And since, of course, a judge of a Superior Court cannot be a part of the Supreme Judicial Court, or sit therein, it is argued that the statute may be, and ought to be, construed to mean that while a petition may be presented to a judge of the Superior Court, and he may order notice thereon, that is the extent of his power; that he is disqualified to sit in the tribunal; that this very disqualification was anticipated by making it the duty of the Chief Justice to appoint two Judges in such a contingency; and therefore that the Chief Justice can designate or appoint only Justices of the Supreme Judicial Court. If such was the legislative thought, we do not think it would be discourteous to say that it was unhappily expressed.

But such, clearly, was not the legislative intent. Nowhere in the act is any distinction made between Justices of the Supreme Judicial Court and Justices of the Superior Courts. The petition may be presented to a judge of either court. The additional Judge to be designated by the Chief Justice may be a justice of either court. The two that may be appointed, in certain contingencies, may be both from one court, or both from the other, or one from each. Such is the language of the statute, and nothing appears in the context to indicate that the Legislature meant to express any other intention.

The tribunal then might be composed of two Supreme Court Justices, or two Superior Court Justices, or of one Justice from each court. If composed of two Superior Court Justices, it certainly could not be a part of the Supreme Judicial Court; if of one Justice from each court, no more would it be a part of the Supreme Judicial Court, for a Superior Court Justice cannot constitutionally

sit in, or be a part of, the Supreme Judicial Court. That court is a constitutional court and can be held only by constitutionally appointed Justices of that court. Nor is the statutory character of the tribunal changed, if it happens that both the Justices,—the one designated by the petitioner and the one designated by the Chief Justice,—or the two, as the case may be, appointed by the Chief Justice, are of the Supreme Judicial Court.

Therefore we feel bound to declare that the legislative intention, as expressed, was to create a special tribunal, apart and distinct from either the Supreme Judicial or Superior Courts. It was an inferior tribunal, because constitutionally all other tribunals than the Supreme Judicial Court are inferior tribunals.

We have so far assumed that the tribunal provided for is judicial, or at least, quasi-judicial. But it is suggested that the statute does not contemplate adversary parties whose conflicting rights are to be determined by a judgment, that therefore the tribunal is not a judicial one, and that the tribunal is merely an inquisitorial or political one, whose functions belong to the political departments of the government. However this may be, it is not necessary now to determine whether the tribunal be of the one character or the other. We have already seen that, if judicial, it is special and inferior, and that the Justices cannot be members of it. If it is inquisitorial or political merely, its functions do not belong to the judicial department, and therefore cannot be exercised by members of the judicial department.

Therefore so much of section 12 of chapter 122 of the Public Laws of 1911 as provides for the creation of the tribunal therein provided for, to be composed of Justices of the Supreme Judicial or Superior Courts, or both, is held to be unconstitutional and void.

II. Have the petitioners another adequate remedy? We think not. We think they have no such remedy as should in law bar a writ of prohibition. They may have a remedy in form, but none in substance. The statute made no provision for exceptions, and denied the right of appeal, except on the question of the ineligibility of the candidate to public office. It is suggested that certiorari or a writ of error will lie. But no other such remedy will lie until after the unconstitutional tribunal has completed its hearings, made futile findings which it has no jurisdiction to make, and the same has become a matter of record. No such remedy will lie until after the

parties have been put to pecuniary expense necessarily great, and to an inquiry vexatious, because unconstitutional. And even then their remedy would be a fruitless one. For looking at the case as it stood when the writ of prohibition was denied, and assuming that the tribunal should act with all promptness possible, no remedial process could be entered in court or obtain a hearing until the second Tuesday of October, 1912. Proceedings in court would be open to exceptions. And in view of the practice already adverted to, a universal practice in the history of this court, that a single justice will not feel himself justified in overturning a legislative enactment, on the ground of its unconstitutionality, until it has been so determined by the Law Court, it may be regarded as a certainty that the petitioners, to obtain their remedy, would have been obliged to take the case on exceptions to the Law Court in December, 1912. In the meantime their terms of office would have expired. The question would have become entirely moot so far as these parties are concerned. The case would have been defunct, and, in accordance with invariable practice, the Law Court would have declined to answer the moot questions, and would have dismissed the exceptions. Can it be said that such a proceeding would afford a "remedy" such as the law contemplates? We think not. We think, taking into account the practice and procedure of the court, as we may properly do, that such proceeding must necessarily have ended in no remedy at all.

This situation presents a case, as we think, upon the authorities cited, where the petitioners should have had a writ of prohibition as a matter of right. Whatever may have been the result, if it had been denied as a matter of discretion, to deny it as a matter of law was error in law, to which exceptions would lie. Besides what has been said already, to deny the writ as a matter of law was in effect to decide that the statute is constitutional, and to such a ruling exceptions would lie.

And although the exceptions cannot be reached for argument or decision until the next December term of the Law Court, when they will have ceased to have any practical value, we have no option under the statute. It is our duty to establish the exceptions as presented for allowance. The case will be entered on the law docket and stand for argument on the exceptions at the next term.

*So ordered.*