JOHN SIMMS *et al.* v. H. E. DILLON, JR., *Judge, etc.*

(No. 8667)

Submitted September 2, 1937. Decided October 12, 1937.

*Mahan, Bacon & White,* for petitioners.
*C. B. Vickers* and *R. J. Thrift, Jr.,* for respondent.

RILEY, JUDGE:

This is a proceeding in prohibition originally instituted in this Court by John Simms and others, owners of land taken by the State Road Commission for the rebuilding of U. S. Route No. 60 in Fayette County, West Virginia, to prevent Honorable H. E. Dillon, Jr., Judge of the Circuit Court of Fayette County, from further continuing and refusing to docket the eminent domain suit instituted in his court by the State Road Commission of West Virginia for the purpose of condemning land owned by the petitioners.

The commissioners reported, fixing the compensation due the petitioners for the land taken and the damages to the residue, less the peculiar benefits, and the State Road Commission filed its exceptions to the report and requested a trial by jury. Thereafter, at the request of the petitioners, the case was set for trial on August 5, 1937. On August 3, 1937, the attorney for the State Road Commission appeared in the circuit court and moved that the case be continued generally, assigning as the basis of that motion, the provisions of Chapter 122 of the 1937 Acts of the Legislature, which chapter is an amendment to Code 54-2-14.

By this amendment, the following clause is added to Section 14: "* * * but such proceedings shall proceed to final award or judgment after a reasonable time has elapsed for completion of the work upon the particular property so entered upon and taken possession of, and the applicant shall pay to the owner of the land the amount of compensation and damages as finally determined in such proceedings." The sole reason assigned by the petitioners in support of their application for the writ is the assumption that said Chapter 122 is unconstitutional.

Logically, the first question to be decided is whether or not prohibition is a proper remedy for the determination of the constitutionality of an act of the legislature, if all other requisites for the use of such remedy exist. It is the contention of the respondent, set up by demurrer

to the petition, that prohibition cannot be so used. Although this question has never been expressly decided by this Court, it was raised in the case of *McDonald* v. *Guthrie, Judge,* 43 W. Va. 595, 27 S. E. 844, in which the constitutionality of an act of the legislature was determined in the affirmative, but the court refused to pass on the use of prohibition as a proper remedy, deeming it unnecessary. Judge Brannon, however, who wrote the opinion in the case, speaking for himself alone, said that he believed prohibition was not a proper remedy, assigning as his reason that an appeal would lie to a final judgment of the court in the proceeding as to which prohibition was sought. Nevertheless, it is the opinion of this Court, as presently constituted, that it is necessary to determine the question of the adequacy of the writ of prohibition before the question of the constitutionality of the act can be considered.

The law in effect at the time of this decision in 1897 was the Acts of the Legislature 1882, Chapter 153, Section 1, which provided in the language of the present statute that prohibition should lie as a matter of right. The present statute, Code 53-1-1, prescribing the purposes of the writ of prohibition, provides: "The writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers."

There are many cases from various jurisdictions in which the constitutionality of an act of the legislature has been tried by prohibition. *Bell* v. *First Judicial District,* 28 Nev. 280, 81 P. 875, 6 Ann. Cas. 983, and note; *Ex Parte Roundtree,* 51 Ala. 42; *State* v. *Packard,* 32 N. D. 301, 155 N. W. 666; *Curtis* v. *Cornish,* 109 Me. 384, 84 A. 799. There are, of course, cases to the contrary holding that the constitutionality of an act of the legislature may not be determined in prohibition (*Pizzini* v. *Grinnan, J.,* 112 Va. 241, 70 S. E. 850), and there are cases holding that where there is another adequate remedy, that prohibition will not lie for such a purpose, al-

though it will lie if there be no such remedy. *In re Schumaker*, 90 Wis. 488, 63 N. W. 1050. Also see note, 6 Ann. Cas. 986.

It will be noted from Code 53-1-1 that prohibition lies in this state not only where jurisdiction is not present, but also where the court is exceeding its legitimate powers, although it has full jurisdiction of the subject matter in controversy. A good illustration of the application of this principle is found in the case of *State* v. *Dailey*, 72 W. Va. 520, 79 S. E. 668, 47 L. R. A. (N. S.) 1207, in which the court granted a writ of prohibition to a circuit court that had quashed an indictment on the ground that there was no legal evidence before the grand jury returning the indictment to justify it in making such a return. It is clear that although the Circuit Court of Fayette County had jurisdiction of the proceedings and of the persons affected thereby, nevertheless, if that court had exceeded its legitimate powers by granting a continuance because of an unconstitutional statute, then prohibition lies to test the constitutionality of an act of the legislature. In view of the broad provisions of the statute and the decision in the Dailey case, we are of opinion that prohibition is a proper remedy in the instant case.

This determination leaves remaining for decision the question whether Chapter 122 of the 1937 Acts is constitutional. Petitioners contend that the act is unconstitutional for the following reasons: (1) Because the compensation to be paid the landowner is not required to be paid within a reasonable time; (2) because no interest is allowed on the money due during the interim between entry on the land and the payment of the compensation due for such taking; and (3) because there will be no opportunity to have a jury view the premises at the time the land is taken.

Petitioners assert that the constitutionality of Chapter 122 of the 1937 Acts is governed by the West Virginia case of *McGibson* v. *County Court of Roane County*, 95 W. Va. 338, 121 S. E. 99, which case held an act of the legislature unconstitutional and void which provided that the institution of eminent domain proceedings for

the taking of property and the damaging of the residue for road purposes by a county court might be delayed until sixty days after the work was completed. One of the reasons this act was held unconstitutional was because it did not provide for the payment of the compensation due the landowner within a reasonable time after taking his land, and therefore took property without due process of law.

The West Virginia Constitution (Art. III, Sec. 9) does not require the State of West Virginia to pay in advance for land taken in eminent domain proceedings. This does not violate the Fourteenth Amendment to the Federal Constitution. *Dohany* v. *Rogers,* 281 U. S. 362, 68 A. L. R. 434; *Bragg* v. *Weaver,* 251 U. S. 57, 40 S. Ct. 62, 64 L. Ed. 135. Section 14, Article 2, Chapter 54, Code, gives the State of West Virginia and any of its political subdivisions the right to enter upon the premises sought to be taken upon the filing of the petition to condemn. This portion of that section retains its original form as reenacted by Chapter 122, Acts 1937.

However, it is established by the Supreme Court of the United States that compensation must be made for land taken by a state in order that property will not be taken without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States. *Chicago, Burlington & Quincy Railroad Co.* v. *Chicago,* 166 U. S. 226, 17 S. Ct. 581, 41 L. Ed. 979. The court in that case, on page 239 (of 166 U. S.) of the opinion, approved the following quotation:

> "The conclusion of the court on this question is that, since the adoption of the Fourteenth Amendment, compensation for private property taken for public uses constitutes an essential element in 'due process of law', and that without such compensation the appropriation of private property to public uses, no matter under what form of procedure it is taken, would violate the provisions of the Federal Constitution."

At page 241, (of 166 U. S.) the court further said:

"In our opinion, a judgment of a state court, even if it be authorized by statute, whereby private property is taken for the state or under its direction for public use, without compensation made or secured to the owner, is, upon principle and authority, wanting in the due process of law required by the Fourteenth Amendment of the Constitution of the United States, and the affirmance of such judgment by the highest court of the State is a denial by that State of a right secured to the owner by that instrument."

The Fourteenth Amendment to the Federal Constitution further requires that the statute authorizing the state to take property for public uses shall provide for the payment of the compensation due the owner for such taking within a reasonable time thereafter. *Bragg* v. *Weaver, supra.* This proposition has also been decided in this jurisdiction. *McGibson* v. *County Court of Roane County, supra.* What criterion shall be used in determining what is a reasonable time, is not disclosed by the cases. We think, however, that if there is a reasonable basis for postponing the time of the determination and payment of the compensation due the owner, the legislative determination of what such time is will not be unconstitutional. The Legislature of West Virginia, by the act in question, has established that the time for the determination of the damages for the land taken and the benefits and damages to the residue is after a reasonable time for the completion of the work has passed. There is no doubt that so far as determining the benefits and damages to the residue the time fixed by this act is the most appropriate, because it will be possible to determine with accuracy just what the work will amount to as affecting the remaining property. As to the property actually taken, there is no advantage to be derived by waiting until a reasonable time shall have elapsed for the completion of the work, but the legislature has provided that all these matters shall be determined in the same proceeding. There is an advantage to be had to both the state and the landowner in the avoidance of

multiplicity of suits. Of course, Chapter 122 does not require that the court wait until the work is completed, but only that the court wait until a reasonable time shall have elapsed for the completion of the work on the property of any person. The effect of the statute is to place the work on the property of each individual on a separate status from that of the entire construction project. Under this act, it is the duty of the State Road Commission to act with reasonable efficiency to complete the work on each parcel of land as soon as it may reasonably be done. There is nothing in this record to show that such a reasonable time has elapsed from the entry of the State Road Commission upon the land of the relators to this time.

This case does not contain the objections found in the *McGibson* case, namely, that there is no remedy to the landowner to institute proceedings. The statute, as it now stands, provides that entry on the land may be made after the filing of the petition by the State of West Virginia or any of its political subdivisions. Code 52-2-14, as amended and re-enacted by Chapter 122, 1937, Acts of the Legislature. After the proceedings are once set in motion, and any work on and injury to the property has been done, they may not be abandoned by the state without the consent of the defendant. Code 52-2-14, as amended and re-enacted.

The *McGibson* case held, also, that the action in question in that case was unconstitutional because it did not provide for the payment, within a reasonable time, of the compensation due the landowner. The reasoning of the court was that an unlimited time might, under the provisions of that act, elapse before the compensation would be due. The act there did not provide that a reasonable time for the completion of the work should be allowed, but provided that the proceeding could be instituted within sixty days after the completion of the work. Of course, under such statute, the state might take its own time and permit years to elapse before the compensation due would be payable. The present act has no such vice, and if the State Road Commission should attempt to permit

an unreasonable length of time to elapse and not pursue the work efficiently to completion, the court would, on proper motion of the landowner, require that the proceedings progress to final award or judgment.

It does not seem to us that it is an unreasonable requirement that the state be given a reasonable time to complete the work under construction on each parcel taken before the case shall proceed to final award and judgment. That is, of course, if it can be said that there is any provision of the statute or requirement of law that the state add an amount to the damages and compensation which will place the landowner in the position that he would have enjoyed had he been paid when the property was taken. However, the State Road Commission is under the duty to pay legal interest upon the amount of the award from the time of taking until actual payment.

So far as we have been able to ascertain, there are no decisions by the Supreme Court of the United States determining what is compensation under the requirements of the Fourteenth Amendment. However, that court, in determining what is "just compensation" under the provisions of the Fifth Amendment, which applies to Congress only, has decided that, if there is any delay in the payment of compensation between the time that the land is taken and the time that the compensation is paid, there must be an amount added sufficient to place the landowner in the position he would have been in had the money been paid to him at the time the land was taken. *Brooks-Scanlon Corporation* v. *United States*, 265 U. S. 106, 44 S. Ct. 471, 68 L. Ed. 934. At page 123 of 265 U. S. the court said:

> "And, if the taking precedes the payment of compensation, the owner is entitled to such addition to the value at the time of the taking as will produce the full equivalent of such value paid contemporaneously. *Interest at a proper rate is a good measure of the amount to be added.*" (Italics ours).

In construing the Fifth Amendment, the Supreme

Court of the United States has held that interest is properly allowable upon an award made in a condemnation proceeding although the statute authorizing the taking of the property for that particular purpose did not provide for the payment of interest. *United States* v. *Rogers,* 255 U. S. 163, 41 S. Ct. 281, 65 L. Ed. 566. In that case, while admitting that the United States, upon claims made against it, cannot, in the absence of statute to that end, be subjected to the payment of interest, the court nevertheless held that the government having taken the land of the defendants in error, it became the duty of the government to make just compensation as of the time when the owners were deprived of their property.

In the case of *Seaboard Airline Railway Co.* v. *United States,* 261 U. S. 299, 304, 306, 43 S. Ct. 354, 356, 67 L. Ed. 664, the court held:

> "The compensation to which the owner is entitled is the full and perfect equivalent of the property taken. *Monogahela Nav. Co.* v. *United States,* [*supra*] * * *. It rests on equitable principles and it means substantially that the owner shall be put in as good position pecuniarily as he would have been if his property had not been taken. (Citing cases). He is entitled to the damages inflicted by the taking.
>
> \* \* \* \* \* \* \*
>
> "Where the United States condemns and takes possession of land before ascertaining or paying compensation, the owner is not limited to the value of the property at the time of the taking; he is entitled to such addition as will produce the full equivalent of that value, paid contemporaneously with the taking. Interest at a proper rate is a good measure by which to ascertain the amount so to be added. The legal rate of interest, as established by the South Carolina statute was applied in this case. This was a 'palpably fair and reasonable method of performing the indispensable condition to the exercise of the right of eminent domain, namely, of making "just compensation" for the land as it stands, at the time of taking.'
>
> \* \* \* \* \* \* \* \*

> "The addition of interest allowed by the district court is necessary in order that the owner shall not suffer loss and shall have 'just compensation' to which he is entitled."

The court, in that case, also recognized that in the absence of a stipulation to pay interest or of a statute allowing it, that the United States cannot be required to pay interest upon unpaid accounts or claims. There, the court held that a landowner whose land was taken by the United States under the authority of the Lever Act was entitled to interest upon the compensation due him from the time the land was taken until such time as the compensation should be paid, although the Lever Act did not expressly authorize the payment of interest. In this case, the court held that just compensation for the property taken was provided by the Constitution, and that his right could not be taken away by statute. It held, furthermore, that the ascertainment of what is just compensation is a judicial function.

In the case of *Petition of State Highway Commissioner,* 279 Mich. 285, 271 N. W. 760, which involved the construction of a statute of the State of Michigan providing for the condemnation of property which allowed no interest upon the award, the Supreme Court of the State of Michigan decided as follows:

> "There can be no question but that one whose property is taken for public use has the constitutional right to 'just compensation'; and, as hereinafter noted, there is an abundance of authority that interest on a deferred payment of an award is a just element of damages. As applied to the instant case, the provision in the Federal Constitution does not differ materially from that in the Michigan Constitution, which we quote: 'Private property shall not be taken by the public nor by any corporation for public use, without the necessity therefor being first determined and just compensation therefor being first made or secured in such manner as shall be prescribed by law.' Michigan Constitution, Art. 13, *Section* 1."

Later, in the opinion, the court added:

> "While the right to interest prior to confirmation because of deferred payment of an award may vary with the facts of individual cases, under the facts presented by this record we think the probate judge, upon the confirmation hearings more than five years after appellees' properties had been appropriated, was not in error in holding as a matter of law that he should add to the amount of the commissioners' appraisals interest at the legal rate computed from the time the railroad company took possession of the right of way."

In that case, the court held that an allowance of interest was proper in the absence of any statutory authorization therefor, instead of holding the whole act unconstitutional.

Article III, Section 9 of the West Virginia Constitution provides:

> "Private property shall not be taken or damaged for public use, without *just* compensation; nor shall the same be taken by any company, incorporated for the purposes of internal improvement, until just compensation shall have been paid, or secured to be paid, to the owner; and when private property shall be taken, or damaged, for public use, or for the use of such corporation, the compensation to the owner shall be ascertained in such manner, as may be prescribed by general law; Provided, that when required by either of the parties, such compensation shall be ascertained by an impartial jury of twelve freeholders." (Italics supplied.)

The pertinent part of the Fifth Amendment to the Constitution of the United States provides:

> "* * * nor shall private property be taken for public use, without *just* compensation." (Italics supplied).

The provisions of the two constitutions, so far as compensation is concerned, are identical. It is also to be noted that the West Virginia provision is very much the

same as that of the Michigan Constitution as quoted in a preceding case in that they both provide for "just compensation."

No case has come to our attention expressly holding that the protection given to citizens of a state by the provisions of the Fourteenth Amendment to the Constitution of the United States against legislation by their own legislature is identical with the provisions of the Fifth Amendment relating to the taking of property for public use without just compensation. In the case of *Dohany* v. *Rogers,* 281 U. S. 362, 50 S. Ct. 299, 301, 74 L. Ed. 904, 68 A. L. R. 434, the United States Supreme Court, in deciding whether or not the Michigan condemnation statute was constitutional, said:

> "The right to *just compensation* to which appellant is entitled *under the due process clause,* without regard to the particular procedure employed, *is guaranteed* both *by the 14th Amendment* and Article 13 of the Michigan Constitution. We cannot assume that, under the procedure prescribed by the state for the taking of appellant's land he will not be entitled to receive or will in fact be denied the *just* compensation which the Constitution guarantees." (Italics supplied).

It seems a fair inference from the foregoing language for us to hold that just compensation under the Fifth Amendment is synonymous with due process of law under the Fourteenth Amendment so far as eminent domain proceedings are concerned, and therefore, under the authority of the foregoing opinions and cases, that Chapter 122 of the 1937 Acts of the Legislature of West Virginia is not unconstitutional because it does not expressly provide for the payment of interest during the interim between the taking of the land and the actual payment of compensation. Under the authority of these cases, it is not necessary to so provide in the statute setting up the eminent domain procedure, but such right to interest is implied, and it will become the duty of the court entering the final award to provide for the payment of interest at

the legal rate during the time between the taking and the final payment of the money due.

The last contention of petitioners is that they have a constitutional right to have a jury view the premises at or reasonably near the time of the taking so that the value of the land taken and the damages to the residue can be efficiently ascertained as of the time of taking, and that Chapter 122 deprives them of that right. There is no express provision in the Constitution of West Virginia giving petitioners the right to have the jury make such a view.

Article III, Section 13 of the West Virginia Constitution, *preserving* the right to trial by jury, does not give a right to a trial by jury in any case in which it did not exist at common law. *Lawhead, Receiver,* v. *Board of Trustees of Grand Lodge,* 115 W. Va. 475, 176 S. E. 860; *Lamb* v. *Strother,* 118 W. Va. 257, 189 S. E. 865. Neither does Section 10 of Article III, providing that "No person shall be deprived of life, liberty, or property without due process of law, and the judgment of his peers," give such right. *Lawhead, Receiver,* v. *Board of Trustees, supra.* There was no right to a jury trial in an eminent domain proceeding at common law. *Chicago, etc. R. R. Co.* v. *Chicago,* 166 U. S. 226, 244, 17 S. Ct. 581, 41 L. Ed. 979.

Section 9 of Article III of the Constitution of West Virginia provides that in an eminent domain proceeding, when required by either of the parties, the compensation shall be ascertained by an impartial jury of twelve freeholders. This, however, is not to say that there is a right to have the jury *view* the premises. Code 54-2-10, prescribing how a jury trial in eminent domain proceedings may be secured, says: "The cause shall be tried as other causes in such court, and the jury, ascertaining the damage or compensation to which the owner of the land proposed to be taken is entitled, shall be governed by section nine of this article." The general statute governing a view by the jury is Code 56-6-17. The limitation placed by that statute upon the right of either party to have the jury view the premises is that it shall appear to the court that such view is necessary to a just decision of

the case. In the case of *Gunn* v. *Ohio River Railroad Co.,* 36 W. Va. 165, 14 S. E. 465, 32 Am. St. Rep. 842, it was held in the trial of a negligence case that the right to have a jury view the premises is one which rests largely in the discretion of the trial court. This court has held in the case of *Compton* v. *County Court of Marshall County,* 83 W. Va. 745, 99 S. E. 85, that in an eminent domain proceeding the lower court has discretion as to whether or not a jury view shall be permitted of the premises, and in that case where a view had not been permitted by the lower court, the action of the circuit court was upheld. It is clear from the foregoing that the right to have a jury view the premises which are the subject of controversy is not a constitutional right, but one which is governed by legislative enactment.

For the foregoing reasons, the writ will be denied.

*Writ denied.*