THE STATE ROAD COMMISSION OF WEST VIRGINIA, *a corporation,* AND PATRICK C. GRANEY, SR., *State Road Commisisoner of West Virginia*

*v.*

B. B. MILAM AND BESSIE M. MILAM

(No. 12078)

Submitted April 19, 1961.        Decided June 6, 1961.

*Philip G. Terrie, Bernard Duffy Horan, Jack O. Friedman,* for plaintiffs in error.

*Vincent V. Chaney, George S. Sharp,* for defendants in error.

HAYMOND, PRESIDENT:

On this writ of error the petitioners, The State Road Commission of West Virginia and Patrick C. Graney, Sr., State Road Commissioner of West Virginia, seek reversal of the final judgment of the Circuit Court of Kanawha County, entered April 12, 1960, which confirmed a verdict of the jury in favor of the defendants, B. B. Milam and Bessie M. Milam, for the sum of $74,750.00 as compensation for 27.724 acres of land taken and for damage to the residue of a tract of approximately 118 acres of land owned by the defendants in Poca District of Kanawha County.

The petitioners instituted this proceeding in eminent domain in the Circuit Court of Kanawha County to acquire land owned by the defendants in connection with the construction of a new public highway known

as Interstate Route No. 77. The commissioners appointed by the court awarded $40,287.00 as compensation for the land taken and damage to the residue. The defendants filed exceptions to the report of the commissioners and demanded that the compensation to be paid be ascertained by a jury. Upon the trial of the case the jury by its verdict found that $74,750.00 would be just compensation for the real estate taken and for damage to the residue beyond all benefits to be derived from the work to be constructed. The circuit court overruled the motion of the petitioners to set aside the verdict and rendered judgment for the amount of the verdict with interest and costs. To that judgment this Court granted this writ of error and supersedeas upon the application of the petitioners.

The petitioners assign as error the action of the trial court in denying the motion of the petitioners that the jury be permitted to view the premises and in permitting a witness in behalf of the defendants to give testimony of the reproduction cost of buildings, less depreciation, on the portion of the land taken. These buildings were the dwelling house occupied by the defendants, a tenant house, two barns, a garage and several small structures used in connection with the operation of the farm on the 118 acres of land owned by the defendants.

The petitioners insist that under the provisions of Sections 9 and 10, Article 2, Chapter 54, Code, 1931, as amended, they were entitled to have the jury view the premises involved in this proceeding and that the refusal of the trial court to permit the jury to view the premises constituted reversible error.

Section 9 provides, in part, that "The commissioners, after viewing the property and hearing any proper evidence which is offered shall ascertain what will be a just compensation to the person entitled thereto for so much thereof as is proposed to be taken * * *, and for damage to the residue of the tract beyond all benefits to be derived, in respect to such

residue, from the work to be constructed, * * *, and make report to the following effect: * * *."

Section 10, to the extent here pertinent, also provides that "Within ten days after such report is returned and filed as aforesaid either party may file exceptions thereto, and demand that the question of the compensation to be paid be ascertained by a jury, in which case a jury of twelve freeholders shall be selected and impaneled for the purpose, in such manner as the court shall direct. * * *. The cause shall be tried as other causes in such court, and the jury, ascertaining the damage or compensation to which the owner of the land proposed to be taken is entitled, shall be governed by section nine of this article. * * *."

Substantially the same provisions were contained in Sections 14 and 17, Chapter 42, Code, 1891, and those sections remained in force and effect until they were amended and reenacted by Sections 9 and 10, Article 2, Chapter 54 of the Code of 1931. Section 14 contained this provision: "As to each tract, the commissioners, after viewing the same, and hearing any proper evidence which is offered, shall ascertain what will be a just compensation to the person entitled thereto for so much thereof as is proposed to be taken, and for damage to the residue of the tract, * * * from the work to be constructed, * * *, and make report to the following effect: * * *."; and Section 17, in part, provided that "The cause shall be tried as other causes in said court, and the jury, in ascertaining the damage, or compensation to which the owner of the land proposed to be taken is entitled, shall be governed by section fourteen of this chapter."

In *Charleston and Southside Bridge Company v. Comstock,* 36 W. Va. 263, 15 S. E. 69, a proceeding in eminent domain, cited and relied upon by the petitioners, decided March 26, 1892, when the quoted provisions of Sections 14 and 17 were in effect, this Court held in point 15 of the syllabus that "The parties have

a right to have the premises viewed by the jury as well as by the commissioners for the ascertainment of facts before rendering their verdict." In the opinion in that case this Court said: "Especially is this so with us, as the jury as well as the commissioners are required, if either party demands it, to view the premises for the ascertainment of the facts in this proceeding, as well as to hear any proper evidence which is offered. Section 14, c. 42, Code; *Renick v. Railroad Co.,* 49 Ia. 672."

With respect to the question whether a view of the premises constitutes evidence to be considered by the jury in determining the amount of just compensation or operates merely to enable the jury to understand and apply the evidence more readily, the decisions, which at times are conflicting even in the same jurisdiction, indicate a distinction between a view by the jury in criminal and civil cases where land values are not involved and proceedings in eminent domain to determine just compensation for land taken or damaged for public use. In dealing with the subject in 5 Nichols on Eminent Domain, third edition, Section 18.31, the author uses this language: "Views by the jury are frequently taken in criminal and civil cases having no relation to land damages, and it is generally recognized that the function of a view in such cases is merely to enable the jury to understand and apply the evidence more readily. In eminent domain proceedings, even when carried on in court before a common law jury under the same external conditions as an ordinary civil case, the function of the view is somewhat broader. It is everywhere conceded that the jury may use its knowledge of the physical facts disclosed by the view, even if the existence of such facts is contradicted by the evidence. In some jurisdictions, however, it is considered that the view cannot be treated as evidence of value or damage, and that such issues must be decided wholly on the testimony of witnesses, the view being merely of service in applying and understanding the evidence. In most jurisdic-

tions, however, it is held that, when the evidence is conflicting, the jury may take into consideration what they saw on the view, in connection with their own knowledge and experience, in determining the weight of the testimony, and may thus fix the damages by both evidence and view. This rule seems the sounder, as being more consistent with the function of a view in land damage cases as they were originally conducted.''

In the leading case of *Guyandot Valley Railway Company v. Buskirk*, 57 W. Va. 417, 50 S. E. 521, 110 Am. St. Rep. 785, this Court held in point 4 of the syllabus that: ''What is termed the market value of property in the law of eminent domain is not a value fixed by concensus of opinion in the community in which the land is or among businessmen or dealers in real estate who are familiar with it, but is a value to be fixed by the jury upon consideration of all the evidence in the case, including the knowledge of the property which they have acquired by their view of it.'' In that case this Court said an instruction to the effect that the market value of land ''together with the view of the premises would be the proper measure of compensation to be allowed by the jury to the defendants for the same.'', which had been refused, was correct and should have been given, and in the opinion used this language: ''On the question of value, the jury may rest the verdict largely upon their own knowledge derived from a view of the premises.''

In *The Chesapeake and Ohio Railway Company v. Johnson*, 137 W. Va. 19, 69 S. E. 2d 393, a proceeding in eminent domain, this Court, quoting from *State v. McCausland*, 82 W. Va. 525, 96 S. E. 938, which, however, was not a proceeding in eminent domain, used this language with respect to a view by the jury: ''Such a view is for the purpose of informing the jurors upon any pertinent inquiry being made in the trial of the case, and the things which they observe upon such view, so far as they are pertinent to show anything proper to be proved, are to be considered by

them the same as any other evidence introduced in the case.''

Although this Court has said in numerous cases, which were not proceedings in eminent domain, that a view may be considered as evidence by the jury together with the other evidence in the case, *Frampton v. Consolidated Bus Lines, Inc.,* 134 W. Va. 815, 62 S. E. 2d 126; *State v. Henry,* 51 W. Va. 283, 41 S. E. 439; *Fox v. Baltimore and Ohio Railroad Company,* 34 W. Va. 466, 12 S. E. 757, and in other cases, some of which, *Tennessee Gas Transmission Company v. Fox,* 134 W. Va. 106, 58 S. E. 2d 584; *The State of West Virginia By The State Road Commission v. Sanders,* 125 W. Va. 143, 23 S. E. 2d 113; and *Chesapeake and Ohio Railway Company v. Allen,* 113 W. Va. 691, 169 S. E. 610, were proceedings in eminent domain, has also said that though such view is not in all respects evidence it enables the jury better to understand the testimony given in court, *Malamphy v. Potomac Edison Company,* 140 W. Va. 269, 83 S. E. 2d 755; *Thorn v. Addison Brothers and Smith,* 119 W. Va. 479, 194 S. E. 771; *Doman v. The Baltimore and Ohio Railroad Company,* 125 W. Va. 8, 22 S. E. 2d 703, this Court, for the purpose of clarifying and settling this specific question with respect to a proceeding in eminent domain, now expressly adheres to and reaffirms its decisions in *Guyandot Valley Railway Company v. Buskirk,* 57 W. Va. 417, 50 S. E. 521, 110 Am. St. Rep. 785, and *The Chesapeake and Ohio Railway Company v. Johnson,* 137 W. Va. 19, 69 S. E. 2d 393, disapproves all statements to the contrary in its prior decisions in proceedings in eminent domain, and holds that a view of the premises by a jury in a proceeding in eminent domain is evidence to be considered by the jury in ascertaining just compensation for land which is taken or damaged for public use.

The distinction between different types of cases is clear and definite. In criminal and civil cases, other than proceedings in eminent domain, the jury is not called upon to ascertain what will be just compensa-

tion for taking or damaging that which it views, whereas in a proceeding in eminent domain the jury is required to determine the value of the land which it observes and examines to ascertain just compensation to be awarded for taking or damaging that which is the object of its view.

Under the mandatory provisions of Sections 9 and 10, Article 2, Chapter 54, Code, 1931, as amended, that "The commissioners, after viewing the property and hearing any proper evidence which is offered shall ascertain what will be a just compensation to the person entitled thereto for so much thereof as it proposed to be taken * * * , and for damage to the residue of the tract beyond all benefits to be derived, in respect to such residue, from the work to be constructed, * * * .", and "The cause shall be tried as other causes in such court, and the jury, ascertaining the damage or compensation to which the owner of the land proposed to be taken is entitled, shall be governed by section nine of this article.", and by virtue of the meaning and effect given by this Court in the *Comstock* case to substantially the same provisions of the statute before it was amended and reenacted in its present form, either party in a proceeding in eminent domain is entitled, as a matter of right, to a view of the premises during a jury trial in such proceeding and the denial by the circuit court of the motion of the petitioners that the jury be permitted to view the premises, in disregarding the provisions of Sections 9 and 10 and is depriving the petitioners of the evidence afforded by such view, constituted reversible error.

The provision in Section 10 that "The cause shall be tried as other causes in such court" simply means that procedure in a proceeding in eminent domain shall conform to the procedure in other cases except with respect to a view by the jury which, if requested by either party, is required by virtue of the provision that "the jury, ascertaining the damage or compensation to which the owner of the land proposed to be taken is entitled, shall be governed by section

nine of this chapter." That provision is mandatory and requires a change of procedure to that extent in the trial of a proceeding in eminent domain.

The trial court should have complied with the provisions of Sections 9 and 10, instead of erroneously applying the provisions of Section 17, Article 6, Chapter 56, Code, 1931, which do not supersede or suspend the operation of the pertinent provisions of Sections 9 and 10 and do not govern or control a proceeding in eminent domain. Section 17 provides, in part, that the jury may in any case, at the request of either party, be taken to view the premises or place in question or any property matter or thing relating to the controversy between the parties when it shall appear to the court that such view is necessary to a just decision. These provisions of that section authorize a trial court to exercise discretion in granting or refusing a view by the jury in criminal and civil cases in general but do not authorize the exercise of such discretion in proceedings in eminent domain which are governed by the specific provisions of Sections 9 and 10. To hold otherwise would nullify and emasculate the clear, express and specific provisions of those sections and would permit a general statute to control and render inoperative the provisions of a special statute and would produce a result which can not be given judicial sanction.

The defendants cite and rely upon the case of *Simms v. Dillon,* 119 W. Va. 284, 193 S. E. 331, in support of their contention that a view of the premises in this proceeding is not mandatory but is within the discretion of the trial court. The holding in that case is distinguishable from and does not control the decision in the case at bar. The principal question in that case involved the constitutionality of Chapter 122, Acts of the Legislature, 1937, Regular Session, which, as amended by Chapter 142, Acts of the Legislature, 1939, Regular Session, now appears as Section 14, Article 2, Chapter 54, Code, 1931, as amended. This Court upheld the constitutionality of that statute and held in

point 4 of the syllabus that "Article III, Section 13 of the West Virginia Constitution simply provides the right of trial by jury as it existed at common law. At common law there was no such right in a condemnation proceeding. Therefore, Chapter 122 of the 1937 Acts of the Legislature is not violative of this constitutional provision in that it provides for the entry upon lands sought to be taken for public use before final award of damages without first affording to the land owner the right to have the *jury view the premises at or reasonably near the time of taking the land.*" (Emphasis supplied). Though this Court did say in the opinion that the right to have the jury view the premises, which are the subject of controversy, is not a constitutional right, it also said that such right is governed by legislative enactment and, although this Court held in point 4 of the syllabus that Chapter 122, Acts of the Legislature, 1937, Regular Session, did not give the land owner the right to have the jury view the premises at or reasonably near the time of taking the land, it did not hold that there was no statutory right to such view at or during the trial of a proceeding in eminent domain.

The opinion in the *Simms* case also referred to Section 10, Article 2, Chapter 54, Code, 1931, and quoted the provision of that section that "The cause shall be tried as other causes in such court, and the jury, ascertaining the damage or compensation to which the owner of the land proposed to be taken is entitled, shall be governed by section nine of this article.", but the opinion did not quote or discuss, and apparently overlooked, the applicable provision of Section 9 of the same article and chapter, which requires the commissioners, after viewing the property and hearing any proper evidence which is offered, to ascertain what will be a just compensation to which the land owner is entitled for so much land as is proposed to be taken and for damage to the residue beyond all benefits to be derived, in respect to such residue, from the work to be constructed. Instead of giving effect

to that provision of the statute and considering it in the light of the decision in the *Comstock* case, the opinion mentioned and applied Section 17, Article 6, Chapter 56, Code, 1931, which is characterized as the general statute, governing a view by the jury, and based the application of that statute upon the decisions of this Court in *Gunn v. Ohio River Railroad Company*, 36 W. Va. 165, 14 S. E. 465, 32 Am. St. Rep. 842, and *Compton v. The County Court of Marshall County*, 83 W. Va. 745, 99 S. E. 85. Neither of those cases was a proceeding in eminent domain, although the opinion indicated that the *Compton* case was regarded as such a proceeding. The *Gunn* case was based on the negligence of the defendant in causing the death of a young child which was struck and killed by one of its trains, and the *Compton* case was an action to recover damages to the property of the plaintiff caused by the defendant in changing the grade of a public road on which the property of the plaintiff abutted. In each of those cases a view of the premises, under the general statute, was within the discretion of the trial court, but the decision in each of those cases with respect to a view by the jury does not constitute authority for the proposition that the general statute applies to and governs the right to a view of the premises in a proceeding in eminent domain. To the extent that the statements to that effect in the opinion in the *Simms* case conflict with and are contrary to the holding of this Court in the *Comstock* case, which is now adhered to and reaffirmed concerning the right of either party to a view of the premises in a proceeding in eminent domain, such statements are disapproved.

The contention of the petitioners that the circuit court erred in permitting a witness in behalf of the defendants to testify concerning the reproduction cost of the buildings, less depreciation, is devoid of merit. Other witnesses in behalf of the defendants testified as to the market value of the land and the testimony of the witness as to the reproduction costs of the buildings, less depreciation, was offered merely as an

element of the market value of the land in its entirety as enhanced by the buildings and the circuit court on its own motion instructed the jury to that effect. Such evidence was admissible and the action of the circuit court in admitting it was correct and proper. In point 4, syllabus, in *The Chesapeake and Ohio Railway Company v. Johnson*, 134 W. Va. 619, 60 S. E. 2d 203, this Court held that "In a condemnation proceeding in which land improved with a suitable building is taken, evidence of the reproduction cost of such building, less proper deductions for depreciation, as an element of the market value of the land in its entirety as enhanced by the building, at the time the land is taken, is admissible."

The judgment of the Circuit Court of Kanawha County is reversed, the verdict of the jury is set aside, and a new trial is awarded the petitioners.

*Judgment reversed; verdict set aside; new trial awarded.*